Order to be entered, and, if not agreed upon, will be settled by me.

---

BARGEY v. MASSARO MACARONI CO. et al.

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. MASTER AND SERVANT ⬤⟿87½, New, vol. 16 Key-No. Series—INJURIES TO
    SERVANT—HAZARDOUS EMPLOYMENT.
        Where deceased was employed casually as a carpenter in repairing a
    building for defendant, who was engaged in the macaroni and saloon business, not under contract, but on various odd jobs, he was not in the employ of the company in a business declared hazardous by the Workmen's Compensation Act (Consol. Laws, c. 67), and his widow could not recover for his death while at work.

2. MASTER AND SERVANT ⬤⟿87½, New, vol. 16 Key-No. Series—INJURIES TO
    SERVANT—LIABILITY—"EMPLOYMENT."
        Under Workmen's Compensation Act, § 3, subd. 5, defining "employment" to include "employment only in a trade, business or occupation carried by the employer for pecuniary gain," an employer is not liable

for the death while at work of one hired by him to repair a building in which he conducted the manufacture of macaroni.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employment.]

Woodward, J., dissenting.

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Act by Louisa Bargey to obtain compensation for the death of her husband, opposed by the Massaro Macaroni Company, employer, and the Employers' Liability Assurance Corporation, insurer. Compensation was awarded, and both opponents appeal. Reversed, and claim dismissed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Bertrand L. Pettigrew and Walter L. Glenney, both of New York City, for appellants.

Jeremiah F. Connor, of New York City, for Workmen's Compensation Commission.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, Deputy Atty. Gen., of counsel), for respondent.

JOHN M. KELLOGG, J. [1] The Macaroni Company was occupying a building which had been an old hotel. It purposed making upon the ground floor of the part of the building repaired a saloon, and to use the second and third floors in its general business. The work in changing the floors and roof was done by the intestate, under a contract by which he was to do the work and furnish the material for $500. That contract was performed by him. A part of the time he had men working with him. As the work progressed from time to time, the company would have extra work done, for which he was paid by the hour. Before the contract work was completed, extra work was contemplated of putting a partition through the saloon part of the building, thus making the saloon smaller than first intended, and using the other part, which was partitioned off from the saloon, as a machinery room for the company. The studding for the partition between the saloon and the new machinery room had been put up as extra work while the contract work was being performed. A delay occurred, perhaps to permit the building to settle, and then the deceased was requested to come on and finish the partition. He was in the saloon part, nailing lath to the studding over the door, when the accident occurred. He was a general carpenter, doing such work as he was called upon to do for different people, usually by the hour, but sometimes took jobs. He was not in the general employ of the company, but was the man it usually employed to do little odd jobs about its building. He never did any work in the macaroni business; his only work for the defendant was doing work upon or about its buildings. I do not think he was an employé in a business declared hazardous by the Workmen's Compensation Law. Clearly he was not engaged in the macaroni business, but his sole business was as a carpenter. The company was not carrying on the carpenter business, or doing any carpenter work for a profit; it was making repairs

and improvements upon its real estate and hired a general workman for that purpose.

[2] If a man in a business not hazardous employs a carpenter to do some work upon his property, like fixing a window or a door, I do not think the person performing the work is an employé engaged in the hazardous business of structural carpentry. A judge who hires an ordinary carpenter to come to his office or house and put in a new window is not engaged in a hazardous business under the law. "Employment" is defined by subdivision 5 of section 3 of the law to include "employment only in a trade, business or occupation carried on by the employer for pecuniary gain." If the employer in the hazardous employment uses his regular employés in doing something which may not be a hazardous employment in itself, but the work is a part of his general employment and incident to it, we may well say that the employé received the injury while engaged in a hazardous employment. But where a man engages a carpenter by the hour to do some work upon his premises in the way of improvements, I cannot feel that he is engaged in the hazardous employment of structural carpentry or repair of buildings as contemplated by group 42 of the law.

I therefore favor a reversal.

SMITH, P. J., and LYON and HOWARD, JJ., concur.

WOODWARD, J. (dissenting). The record of the proceedings before the State Workmen's Compensation Commission discloses no reason for disturbing the determination reached and award made in favor of Louisa Bargey, wife of the deceased workman, Lyman D. Bargey. A careful examination of that record shows clearly the correctness of the results reached by the Commission, and demonstrates that the claimant is fairly entitled to the protection of the Workmen's Compensation Law.

On December 2, 1914, the deceased was at work as a carpenter for the Massaro Macaroni Company in his home town of Fulton. He was doing the work personally; he had then no assistants, and had not had any on the work on which he was then engaged. There had been no contract, written or oral, between himself and his employer regarding the work he was then doing or payment therefor, except that he was told what the employer wanted him to do and he was doing it. He was to be paid by the hour for his time, with reimbursement for any materials furnished by him. He had done other work, at various times, for this and other employers, and, apparently with the one exception hereafter noted, had been similarly paid. When the president of the employer wanted a piece of carpenter work done, he commonly sent for Bargey, and Bargey came and did it. On one previous occasion there had been a rather meager memorandum of an agreement with Bargey covering specified work of an unusual quantity, cost, and duration, at a "lump sum" compensation. In doing the work under that agreement, Bargey had the services of a helper, some weeks or months before. He paid this helper for his time, and when that work was finished the helper went to work elsewhere. Before he began the work in the course of which he met his death, he had com-

pleted all the work to which the written contract related, and had rendered to his employer his final bill for that and other work previously performed. He had no office or store, no bill heads or contract forms, no regular employés, no pay roll, and no insurance as an employer. His work was invariably of the artisan's grade; for at least 14 years he had worked continuously as a carpenter, usually alone on individual jobs, and usually by the day or hour. It does not appear that he ever exercised anything approximating superintendence or independent direction of work he was hired to do.

On the forenoon of December 2, 1914, the floors of the employer's building came crashing down upon Bargey's head, killing him instantly. On December 4, 1914, the employer made its report of the injury to the Compensation Commission, and stated therein as follows:

"Was employé injured in course of employment? Yes.
"Occupation when injured? Carpentry work.
"Was injured employé doing his regular work? Yes.
"Piece or time worker? Time worker and contractor."

Questioned by counsel for the insurance carrier, before the Commission, the president of the employer testified:

"Q. What was his (Bargey's) business? A. Carpenter.   Q. Anything else than a carpenter?   A. He was a contractor."

Undeniably, at the time he met his death, Bargey was working alone, as a time worker by the hour, doing artisan's work, without contract other than that of employment. After comprehensive taking of testimony, the Commission found, as a matter of fact, that the decedent was a carpenter and an "employé" at the time he met his death. The assertion of the insurance carrier that Bargey was not an "employé" within the meaning of the statute cannot be sustained, in the light of the rulings of this court in In re Rheinwald, 168 App. Div. 425; 153 N. Y. Supp. 598, Moore v. Lehigh Valley R. R. (Sup.) 154 N. Y. Supp. 620, In re Powley (Sup.) 154 N. Y. Supp. 426, and similar cases.

Precedent and common sense alike place within the purview of the Compensation Act this claimant's husband and the work he was doing when death ended his service as a wage-earner. We find no reasons for alteration of the views maturely expressed by this court in the Powley, Moore, and Rheinwald Cases.

The Commission's determination as to the claim at bar is abundantly sustained by the evidence, and the award should be affirmed.