Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of FRADEES (WESLEY) KACKEL, Widow and Two Minor Children, Respondents, for Compensation to Themselves under the Workmen's Compensation Law for the Death of NORMAN J. WESLEY, v. SCOTT SERVISS, Employer, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, Insurance Carrier, Appellants.

Third Department, November 14, 1917.

**Workmen's Compensation Law — contract of employment jurisdictional — evidence insufficient to establish employment.**

The existence of a contract of employment is essential to the operation of the Workmen's Compensation Law, and due process of law requires that such fact be determined judicially under the rules applicable to contracts generally.

Evidence examined, and *held*, insufficient to establish a contract of employment or the fact that a third party became the agent of the employer in the employment of the deceased.

APPEAL by the defendants, Scott Serviss and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 16th day of May, 1917.

*Bertrand L. Pettigrew* [*Walter L. Glenney* of counsel], for the appellants.

*Merton E. Lewis, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], and *Robert W. Bonynge*, counsel to the Commission, for the respondents.

WOODWARD, J.:

An award has been made to the claimant, the remarried widow of Norman J. Wesley, and two minor children, by the State Industrial Commission, and the appellants urge

before this court that the relation of employer and employee did not exist between Scott Serviss and Wesley, and we are of the opinion that this contention must be held to be sound, notwithstanding the conclusions of fact of the State Industrial Commission, basing its decision on *Matter of Rheinwald* v. *Builders' Brick & Supply Co.* (168 App. Div. 425). In view of the discussion of this court, including the dissenting opinion, in *Matter of Bargey* v. *Massaro Macaroni Co.* (170 App. Div. 103), and the subsequent affirmance of the order (218 N. Y. 410), we are forced to hold that *Matter of Rheinwald* v. *Builders' Brick & Supply Co.* (*supra*) must be deemed to be limited in its scope to the particular facts of that case, and that it may not be extended to cases not coming within its exact facts. Whatever may have been our individual views they must yield to the authority of the court of last resort, and it may well be that in determining what constitutes a contract of hiring or of agency the common-law rules apply, in order to keep the statute within the limits of constitutional power. While the right to contract is not without limitations, the broad constitutional provisions, which were under review in *Matter of Jacobs* (98 N. Y. 98) and the cases which have followed it, make it evident that a contract dealing with the rights of individuals must have regard to the right to "life, liberty and the pursuit of happiness," and that these contracts must find support in the law in the same manner as other contracts. The Workmen's Compensation Law (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], as amd.) does not cover all contracts of employment; it attempts to provide only for the hazardous occupations enumerated in the law, and when, in the constitutional amendment of 1913 (Art. 1, § 19) it is provided that "nothing contained in this Constitution shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees," it uses the word " employees " in its ordinary sense; it recognizes the subsistence of a contract of employment, which presupposes an employer capable in law of making a contract. The existence of the fact of a contract is essential to the operation of the Workmen's Compensation Law; without such a contract the statute has no operation whatever, and with it it deals only with a specified

body of workers, and no attempt is made, so far as we discover, to make a different rule for determining what is a contract of employment between persons within or without the special groups. In other words, the question whether there is a contract of employment is jurisdictional, and due process of law requires that this fact shall be determined judicially; that the rules which apply to contracts generally shall be applied in determining whether the contract which must underlie the operation of the Workmen's Compensation Law exists, and this is a question of law depending upon established facts. Parties themselves may not make that a contract which the law says is not a contract (*Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215, 225), and it is doubtful if the Legislature would have the power to make that a contract of employment between persons to engage in operating a blast furnace which would not be a contract as between persons who were to operate a farm. However this may be, the Constitution makes no definition of " employer " or " employee " different from the common-law understanding of these words; that they constitute a contractual relation, and all the provisions of the Workmen's Compensation Law start from the foundation of such a contract, and regulate the compensation to be paid for injuries growing out of such contract employment.

If we are right in this, then the jurisdictional fact of a contract of employment must be established by due process of law; by evidence which would be required to establish any other contractual relation. The question here is not whether there is evidence to show that Davis was an independent contractor, but whether Scott Serviss entered into a contract for the employment of Norman J. Wesley, and there is absolutely no competent evidence of any such contract. The Commission, in its conclusions of fact, finds that " Norman J. Wesley had been placed at work painting by Edward B. Davis. Davis was to be paid a lump sum for painting the outside and inside of the house," and in this the Commission accept as true the testimony of Mr. Serviss. It then continues, that " the daily wage of Norman J. Wesley would have to be deducted from this lump sum. * * * The lump sum was, in an economic sense, wages and not profits.

His [Davis'] status was the same as a piece worker; and in reality he was a journeyman wage earner, securing employment at wages a little higher than the prevailing rate on account of tools which he possessed and which he used in his employment, and to pay for the wear and tear thereon. In placing Norman J. Wesley at painting, Edward B. Davis was the agent of Scott Serviss, their employer. Both Norman J. Wesley and Edward B. Davis were the employees of Scott Serviss within the meaning of the Workmen's Compensation Law."

But where is the evidence of agency on the part of Edward B. Davis? Concededly he had agreed to paint the house in the manner described for a lump sum, and the wages of Wesley were to be deducted from that lump sum, and Davis does not pretend that he had any authority from Serviss to hire Wesley; his testimony is that Wesley came to his house and told him that " Mr. Serviss had spoke to him in regard to helping me do some work, and he wanted to know when I was going to do it," but whether this work was the work in question does not appear from this hearsay testimony. Opposed to this is the positive sworn testimony of Mr. Serviss (accepted as true by the Commission) that he never saw the decedent, Norman J. Wesley, until he saw him at the hospital after the accident occurred, and that great pressure was brought to bear upon him to induce him to hold himself as the employer of Wesley by the attending physician. Assuming that agency could be established by the declarations of the supposed agent, there is no attempt on the part of Davis to claim that he was authorized to hire Wesley; his effort is by the vaguest kind of hearsay testimony to show that Mr. Serviss employed Wesley. The Commissioner who conducted the hearing says: " I conclude to accept Serviss' version of the whole affair, that he hired Davis to do the job at $40.00, and furnish tools, ladders, scaffold, brushes, etc., Serviss to furnish the paint, and Davis hired Wesley, and that Davis had control of the work, except as to the result," yet the Commission finds as conclusion of fact that Davis was the agent of Serviss to employ Wesley. There is not a suggestion of evidence in the case in support of the theory of agency; that is expressly negatived by Davis in his claim that Wesley was hired by Mr. Serviss, and the

Commissioner says, in his report, " It is true that Serviss may never have had a talk with the decedent, Wesley, or never had seen him until at the hospital as he says and did not hire him but that he was hired by Davis to go on the job. I accept that version," but at the same time it is held that the claimant is entitled to compensation because Davis was the agent of Serviss in employing Wesley. The only person living who knows whether there was an employment by Serviss testifies positively that there was not, and this is accepted as true, but by a process of reasoning, finding no support in the testimony, it is concluded that Davis, while agreeing to do the work for a lump sum of forty dollars out of which it is conceded that Wesley's pay was to come, became the agent of Serviss to employ Wesley; that while Davis put Wesley to work, and was the person in control of all of the details of the work, except as to results, he was still the agent of Serviss in the employment of Wesley. Davis knows nothing of this alleged agency; with all of his evident anxiety to get under the protection of the statute, it never occurred to him to put forward the theory that he was acting for Serviss in the employing of Wesley — he says Wesley told him Serviss had talked with him about helping do some work, and no one accepts this as true.

If we apply the rule of *Matter of Rheinwald* v. *Builders' Brick & Supply Co.* (*supra*) in all its scope it does not go to the extent of holding that an employee to do a specific piece of work for a fixed sum is by reason of such employment the agent of the employer to hire such labor as he may see fit in carrying out the work. Such a contract, in the absence of other provisions, is limited to the personal service of the person employed; it is not a general agency to employ other persons to do the work, unless the person is, in fact, a subcontractor.

The finding of fact that Davis became the agent of Serviss in the employment of Wesley is wholly without evidence to support it, and may not be sustained.

The award should be reversed and the claim dismissed.

All concurred.

Award reversed and claim dismissed.