ROCKEFELLER v. INDUSTRIAL COMMISSION OF UTAH.

No. 3631. Decided April 29, 1921. (197 Pac. 1038.)

1. MASTER AND SERVANT—RELATION ESSENTIAL TO COMPENSATION FOR INJURY. Under Comp. Laws 1917, § 3110, subd. 2, as amended by Laws 1919, c. 63, defining employers subject to the Industrial Act, the existence of a contract of employment, either expressed or implied, is essential to the jurisdiction of the Industrial Commission to award compensation.

2. MASTER AND SERVANT—RELATION QUESTION OF LAW ON UNDISPUTED FACTS. Though the question whether a contract of employment existed is one of mixed law and fact if the facts are disputed, it is one purely of law if the whole agreement respecting the alleged employment is in writing or if the facts respecting the employment are not in dispute.

3. MASTER AND SERVANT—TAXI SERVICE MAN HELD A BAILEE, AND NOT AN "EMPLOYÉ," WITHIN COMPENSATION ACT. One permitted to wait at a taxi stand when he chose to do so and to answer

calls which there was no one else to answer, receiving for his services 25 per cent. of the amount collected from the patron, and accounting to the owner of the taxicab for the remainder, *held* a bailee of the vehicle, and not an employé within the Industrial Act.

4.  MASTER AND SERVANT—SUBSTITUTE NOT EMPLOYÉ WITHIN COMPENSATION ACT UNLESS HE SUBSTITUTES FOR EMPLOYÉ WITHIN ACT.  Though a substitute is entitled to the same compensation as the employé for whom he is a substitute, he is not entitled to any compensation unless the employé for whom the substitution is made comes within the Industrial Act.

5.  MASTER AND SERVANT—PARTNERS NOT COUNTED AS EMPLOYÉS WITHIN COMPENSATION ACT.  Evidence that a taxicab business was in charge of two men who had authority to run the business and employ or discharge help so that they were partners, and that the only other employés were a repair man and a driver who regularly answered calls on commission, does not show that there were three persons employed so as to bring the owners within the Industrial Act without their election to operate under it, since partners cannot be employés.

6.  MASTER AND SERVANT—VOLUNTEERS NOT COUNTED AS EMPLOYÉS WITHIN COMPENSATION ACT.  Men and boys who were permitted to remain at a taxi stand and who occasionally, as volunteers, drove the taxis to meet an unusual demand, are not employés who can be counted in determining whether the owners of the stand employed three men so as to be within the Industrial Act.

7.  MASTER AND SERVANT—PAYMENT BY COMMISSION NOT CONCLUSIVE AGAINST EMPLOYMENT.  The fact that the compensation for service rendered was by payment of a commission does not determine that there was no contract of employment.

8.  MASTER AND SERVANT—HEARSAY ALONE INSUFFICIENT TO SUSTAIN INDUSTRIAL COMMISSION'S FINDINGS.  Though, under Comp. Laws 1917, § 3149, the Industrial Commission has the right to receive hearsay evidence for certain purposes, it can only use such evidence to lead to tangible proof which sheds light on an ultimate question, and a finding by the Commission based on hearsay evidence alone is not supported by sufficient evidence.

9.  MASTER AND SERVANT—REFEREE HELD TO HAVE DISREGARDED LIMITS ON HEARSAY EVIDENCE AND CONCLUSIONS.  A referee of the Industrial Commission who permitted four witnesses to testify to the statements made by deceased before he died and who permitted other witnesses to state their inferences or

conclusions alone disregarded the restrictions on the reception of legally incompetent evidence before the Commission.

10. EVIDENCE—CONCLUSIONS ADMISSIBLE ONLY AS SHORT STATEMENTS OF FACTS. Though a lay witness may be permitted to state a conclusion based on facts and circumstances which he observed, where that is the only method of arriving at the true situation, he can only do so in connection with testimony as to the facts on which conclusion is based.

Application by Jesse Y. Rockefeller, as employer, against the Industrial Commission of Utah to annul an order entered by the Commission requiring the employer to pay Thelma A. Wilson compensation for the death of Darrell E. Wilson, employé.

Award of the Commission ANNULLED.

*W. H. Reeder, Jr.,* and *A. W. Agee,* both of Ogden, for plaintiff.

*Harvey Cluff,* Atty Gen., and *John R. Robinson,* Asst. Atty. Gen., for defendant.

FRICK, J.

The plaintiff made application to this court in which he asks us to annul a certain order entered against him by the Industrial Commission of Utah, hereinafter called Commission. The Commission, upon the application of one Thelma A. Wilson, hereinafter designated applicant, made an order requiring plaintiff to pay said applicant, widow of one Darrel E. Wilson, deceased, the sum of $3,225 in weekly installments of $10.34 for 312 weeks, and, in addition thereto, to pay certain hospital and funeral expenses, including doctors' fees. The applicant alleged, and the Commission found, that the death of said Darrell E. Wilson occurred while he was an employé of the plaintiff, that plaintiff's business was governed by what hereinafter will be designated as the Industrial Act of this state, and that his death was caused by an

accident which arose out of and in the course of said employment. The plaintiff contends that there is no evidence in support of the finding that the deceased was an employé of plaintiff or the finding that his business was governed by the Industrial Act. (Comp. Laws 1917, §§ 3061-3165). He further contends that the deceased was not his employé at the time of the accident, and that plaintiff's business, as it was conducted, does not come within the provisions of the Industrial Act. Plaintiff therefore insists that the Commission exceeded its power or jurisdiction in making the order and award aforesaid.

The principal, indeed the controlling question that is presented by this proceeding is whether the deceased, at the time of the accident, was an employé of the plaintiff, and whether the latter's business was governed by the provisions of the Industrial Act.

Our statute, Comp. Laws Utah 1917, § 3110, subd. 2, as amended by chapter 63, Laws Utah, 1919, reads as follows:

"Every person, firm and private corporation, including every public utility, that has in service, three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written:  *  *  *  Provided, that employers who have in service less than three employés,  *  *  *  shall have the right to come under the terms of this title by complying with the provisions thereof and all rules and regulations of the Commission."

The specific contentions of plaintiff's counsel are: (1) That there was no contract of hire or employment either express or implied, existing between plaintiff and deceased; (2) that the plaintiff did not have "three or more workmen regularly employed"; and (3) that he had not elected to "come under the terms" of the Industrial Act.

The holdings of the courts are unanimous that under statutes like ours it is necessary: (a) That the business in which the accident occurred is within the Industrial Act; and (b) that the relationship of employer and employé exists in the sense of master and servant, and that such relationship be evidenced by a contract of employment either express or implied. The law in that regard is well

and clearly stated in the recent case of *Kackel* v. *Serviss,* 180 App. Div. 54, 167 N. Y. Supp. 348. In referring to the necessity of a subsisting contract of employment the court in that case, at page 55 of 180 App. Div., and at page 350 of 167 N. Y. Supp., says:

"The existence of the fact of a contract is essential to the operation of the Workmen's Compensation Law; without such a contract the statute has no operation whatever, and with it it deals only with a specified body of workers, and no attempt is made, so far as we discover, to make a different rule for determining what is a contract of employment between persons within or without the special groups. In other words, the question whether there is a contract of employment is jurisdictional, and due process of law requires that this fact shall be determined judicially; that the rules which apply to contracts generally shall be applied in determining whether the contract which must underlie the operation of the Workmen's Compensation Law exists, and this is a question of law depending upon established facts."

In view of the terms of our Industrial Act that in order to bring an employer within the statute he must have three or more workmen regularly employed under a contract of hire express or implied, the foregoing statement seems entirely sound. It is also sound doctrine that whether, an alleged agreement amounts to a contract of employment may, under certain circumstances, be a mixed question of law and fact, and under different circumstances may be purely a question of law. If the whole agreement respecting the alleged employment is in writing, the question of whether it constitutes a contract of hire within the provisions of the Industrial Act is purely a question of law. If, upon the other hand, it is not so evidenced and the agreement rests in parol, or partly in parol, or is to be implied     2 or inferred from the facts and circumstances and what was said between the parties, then the jury must find the facts, and, when found, the court must, nevertheless, determine whether the facts so found constitute a contract. And, lastly, if, as in the case at bar, the facts respecting the employment are not in dispute, the question of whether the agreement constitutes a contract of employment is again one of law, and must be determined by the court as is the case

Certiorari.   Award Annulled

in respect of written contracts of hire.   These propositions, we think, will not be disputed, and hence no authorities need be cited in their support.

The first question that we shall consider, therefore, is: Was the deceased at the time of the accident which, caused his death an employé of the plaintiff within the purview of the Industrial Act?

We shall not describe the accident and how it occurred, because that is wholly immaterial in view of the result we have arrived at.

According to the undisputed evidence, the plaintiff was doing business in Ogden City under the firm name and style of "84 Taxi Service."   The undisputed evidence is also to the effect that one Ben Trobough owned an interest in the taxi service, and that the plaintiff was the manager. Both plaintiff and said Trobough would at times attend calls for taxi service.   There were eight automobiles kept in the business, some large ones for large parties, and the others smaller cars.   Besides plaintiff and Trobough, who was not always. in attendance at the place of business, the plaintiff also had one man whom he called a regular employé and who was paid at the rate of $30 per week.   It was the duty of the employé just mentioned to see that the automobiles which were used in the taxi service were kept in order and repair, and, in connection with that duty, he also at times attended to calls for taxi service.   He, it appears, received no extra remuneration, however, when he attended to calls. Plaintiff had another man, a brother of the automobile repairer, who attended to the calls for taxi service as such calls were made by those desiring a taxi.   The latter employé was not paid a fixed wage for this service, but received a commission of 25 per cent. of all that he obtained from the taxi service to which he gave his personal attention.   This employé had the first right to all calls when he was at leisure; that is, if he was not otherwise engaged on a call, no one else had the right to answer a call as it was received at plaintiff's place of business if he desired to avail himself of it.   As before stated, the plaintiff, Mr. Trobough when he

was present, the car repairer when he was not otherwise engaged, and his brother, who received the 25 per cent. for his services, all attended calls when taxi service was required, but the 25 per cent. man had the first right to respond to any call as it came in. That, the evidence shows, was the manner in which plaintiff's business was conducted when the deceased applied to him for work. The only evidence respecting the arrangement between plaintiff and the deceased respecting the latter's employment comes from the plaintiff, and one of the other two men to whom we have referred who was present at the time the deceased applied to the plaintiff for work. In answer to the question: ''What was the shift of Wilson on the night of the accident?'' plaintiff answered:

"Well, Wilson never had any shift. He came when he wanted and went like that. He was just an extra man. Wilson asked me for a job and I told him that I couldn't put him on, that my business wouldn't require another man, and he asked me if he could drive extra if it happened to come that way, and I said, 'If it happens to come that way you are perfectly welcome to the call, but all I can pay you is just a commission.' "

The plaintiff, when asked if he ever authorized the deceased to work as he was doing on the night of the accident, said:

"No sir. He worked whenever he felt like it. He never had any set time at all. He came and went as he pleased."

Plaintiff's statments with regard to the arrangement he made with the deceased are fully corroborated by one of the other men who was present and are not disputed by any one. Then again the trip slips that were introduced in evidence on behalf of the applicant and the statements of all of the witnesses showed that the deceased was driving taxicabs under the arrangement stated by plaintiff; that is, that if calls came in for a taxi and none of the others before mentioned were present, the deceased would answer the calls as they came in and would account to the plaintiff for 75 per cent. of all that he received from such calls for services.

There was some other evidence which we desire to refer to here, although, in our judgment, for the reasons herein-

after appearing, not material to the questions involved.   The plaintiff testified that there were occasions when taxicabs were in demand for funerals, and on a few other occasions when all of the other men were out on trips that there were some other "boys" who, as he said, would "hang around there just sit around the taxi service; * * * they ain't got no place else to go'," and who would sometimes answer a call if there was an idle automobile.   There was also one young man who slept at plaintiff's place of business, and who worked elsewhere, who at times attended to calls when no one else was present, but he stated that he did not ask or receive any compensation for so doing.   None of the men or boys last mentioned were in the employ of the plaintiff, and were mere volunteers in what they did.

In view of the undisputed evidence, therefore, what was the relationship between plaintiff and the deceased?   Manifestly they did not sustain the relationship of master and servant or of employer and employé within the purview of the Industrial Act.   The plaintiff had no control over the deceased whatever.   He could come and go as he pleased. He could answer a call for taxi service or refrain from doing so at will.   He could come at any time of the day and could remain as long as he chose.   While it is true he was at plaintiff's place of business and attended to calls for taxi service as hereinbefore stated for about two weeks before the accident, yet that was because he desired to be there and take advantage of any calls, and not by virtue of any agreement existing between him and plaintiff under which he was obligated to be there.   While it is clear, to our minds at least, that there was no contract of hire and employment between plaintiff and deceased, yet did they not sustain some legal relationship in respect to each other and the business?   We think they did.   What relationship was that?   We think it was that of bailor and bailee.   Let us assume that the deceased had come to plaintiff's place of business and said to him:

"I see that you have an automobile which you do not use in your taxi service, or, if you do use it, it is in answer to calls for

taxi service only, and hence it is not in continuous service. If you will permit me to use your automobile to answer calls for taxi service, I will agree to pay you for its use ten dollars per day, and will pay you that amount for each day's service, and in that way you may perhaps not be required to employ another man regularly in your service."

If plaintiff had assented to the proposition made by deceased and had entered into such an arrangement and the deceased had conducted the taxi service under the arrangement, no lawyer would long hesitate in determining the legal relationship that existed between plaintiff and deceased. The relationship would clearly have been one of bailment for hire, and the plaintiff would have been bailor and the deceased bailee. The mere fact that the deceased merely took the automobile to answer calls for service, and that he paid plaintiff 75 per cent. of what he realized from the service, in no way affected their legal relationship. That such is the case is well illustrated in the case of *Doggett* v. *Waterloo Taxicab Co.,* [1910] 2 K. B. 336. In that case the taxicab company permitted an individual to take the taxicab and use it by paying the company 75 per cent. of the earnings after deducting the cost of the petrol (gasoline) used during the service. The only difference between that case and the one at bar is that there the person obtaining the taxicab went out to solicit business, while here the deceased relied upon calls as they came to the plaintiff, a matter which was entirely to the advantage of the deceased. No doubt, if, when the deceased was out attending to a call, some person had asked him to carry such person to some other part of the city, he could, and no doubt would, have done so, and thus the deceased would have come squarely within the facts as well as the law of the *Doggett Case.* The *Doggett Case* is followed in *Smith* v. *General Motor Cab Co.,* 1 N. C. C. A. 576. In principle there is, there can be, no distinction between the two cases just referred to and the case at bar. The foregoing are the only cases which have been found in which the facts are similar to the case at bar, and in our judgment the decisions in those two cases are manifestly sound in principle. The conclusion is therefore irresistible

that the deceased was in the employ of plaintiff within the purview of the Industrial Act at the time of the accident.

The question of what, if any, rights one of the public would have had if he had sustained an injury by reason of the negligent conduct and management of the automobile by the deceased in the course of the service does not now concern us.   We are here concerned only with the mutual duties and rights of the plaintiff and the deceased as those duties and rights are governed by the Industrial Act

It is, however, also contended on the part of the applicant that the deceased, at the time of the accident, was acting as a substitute of the driver who had the first right to calls as hereinbefore explained.   Assuming, for the purpose of this decision, that under the arrangement between the plaintiff and that driver the latter was an employé within the purview of the Industrial Act, yet that in no way helps the applicant in this proceeding.   While it is true that the decisions are to the effect that a substitute has the same right to compensation as the employé for whom he is a substitute would have had, yet, unless the employé for whom the substitution is made comes within the Industrial Act, the substitute does not come within it.

Under the provisions of our Industrial Act, as we have seen, an employer and his employés do not come within the act unless the employer regularly has in his employ three or more employés, provided the employer has not voluntarily elected to ''come under the terms of the'' Industrial Act.   In this connection the evidence is also undisputed that the plaintiff did not elect to come within the terms of the Industrial Act.   The question then is:   Did he employ ''three or more workmen or operatives regularly'' in his business ''under any contract of hire express or implied''?   We are clearly of the opinion that he did not. Manifestly he had one such workman, namely, the automobile repairer to whom he paid a weekly wage of $30.   If, as before stated, the brother of the one just mentioned, who had the exclusive right to answer calls for taxi service as they came in if he could attend them, was

also an employé of the plaintiff, then the latter had but two employés regularly employed. It has frequently been held that partners are not employés within the purview of compensation acts. See Chartre's Judicial Interpretation of Workmen's Compensation Law, 70, 71. This is so even though the partner is paid a specific amount per day or week. *Cooper v. Ind. Acc. Comm.*, 177 Cal. 685, 171 Pac. 684. Upon principle those decisions are sound if for no other reason than that one cannot at the same time be employer and employé or master and servant.

The evidence in this case is without dispute, however, that neither plaintiff nor Trobough received any other compensation than what they drew from the business after the expenses of conducting the same were paid. Neither, therefore, was engaged in the capacity of an employé. The evidence was that Trobough had the same power to direct the men engaged in the taxi service that plaintiff had. The relationship of the plaintiff and Trobough was therefore that of partners generally speaking.

Nor were any others who upon occasion drove an automoble as hereinbefore stated "regularly employed in the same business" as provided by our Industrial Act. To so hold under the undisputed evidence of this case would be to defeat the humane provisions of the law, which is to preserve and devote the fund created by the Industrial Act for the exclusive benefit of regular employés, and not for mere volunteers as such, who for their own benefit or pleasure drove an automobile in the taxi service business. In view, therefore, that we make every possible allowance in favor of the applicant, yet her deceased husband did not come within the provisions of the Industrial Act, and for that reason she is also excluded from its provisions.

We are therefore clearly of the opinion that the Commission exceeded its jurisdiction or power in making the award in favor of the applicant and in allowing the expenses and fees to which reference has been made.

We do not wish to be understood by anything said or

omitted herein that one who is paid a commission for his services may not be regularly employed within the purview of the Industrial Act. The payment of a commission may be merely a convenient method of fixing the compensation. At all events, it is not determinative of the question of whether one who receives a commission for his services is or is not an employé within the provisions of the Industrial Act. All that we now decide is that under the undisputed evidence the deceased was not an employé of the plaintiff within the provisions of the Industrial Act.

Before concluding this opinion, we feel constrained to add that the referee of the Commission who took the evidence in this case went far beyond his power or authority in taking the evidence. While it is true that in *Garfield Smelting Co.* v. *Ind. Comm.*, 53 Utah, 133, 178 Pac. 57, we held that under Comp Laws Utah, 1917, § 3149, which is part of the Industrial Act referred to the Commission had the right to receive hearsay evidence for certain purposes, yet it is also true that we there attempted to place proper limitations upon such evidence. In referring to the subject we there (53 Utah 149, 178 Pac. 57) said:

> "The Commission may thus have recourse to hearsay evidence if such evidence may lead to some tangible fact which sheds light upon the ultimate question to be determined and found. In that respect it is the duty of the Commission to observe and follow the provisions of the act, and if that be done neither this nor any other court has the right to interfere with the Commission in the method pursued by it in arriving at its conclusions. We however, agree with the New York Court of Appeals, as expressed in 218 N. Y. 439, 113 N. E. 507, Ann. Cas. 1918B, 540, that although the Commission in its investigations may have recourse to hearsay evidence, * * * yet, when it makes its findings, every finding of fact must be based on some substantial legal and competent evidence. In other words, every material finding that is entirely based on hearsay or other incompetent evidence is not supported by substantial evidence, and cannot be permitted to stand if seasonably and properly assailed. This, it seems to us, is the only reasonable and practical construction that should be placed on the Industrial Act when considered as a whole, as it must be."

We have quoted what we there said in full to more especially call attention to the rule there stated. The rule there

laid down is, we believe, both safe and sound, and is applicable to compensation proceedings under the Industrial Act. In the case at bar, however, no attention was paid to the rule there laid down, and no limitations whatever were imposed respecting hearsay evidence. As an example of what was done we need only refer to the fact that at least four witnesses were permitted to testify to the statements made by the deceased before he died. All this was improper. In addition to the foregoing statements, some of the witnesses were permitted merely to state their conclusions or inferences. This was also improper. It sometimes is not improper for a witness to give his conclusion from what he heard and saw and observed where he cannot fully explain all that he heard and saw because it involved more than merely verbal statements, provided he states all that he heard and saw and gives the circumstances fully. Under such circumstances the witness, although a layman, may sometimes and under certain circumstances state his conclusion or his impression. This is permitted, however, only when there is no other method of arriving at the true situation or condition of things. True, the triers of fact, even in such a case, are not bound by the conclusions or inferences of the witnesses, but may consider them in connection with all the other facts and circumstances in evidence. In the case at bar the greater portion of the evidence consists of mere hearsay and conclusions, all of which are upon subjects and matters which fall far outside of the rule stated in the *Garfield Case,* supra, or of the doctrine herein laid down. We have made these observations in no spirit of unfriendly criticism, but merely as a guide to the Commission, and we have no doubt that the Commission will hereafter follow this friendly admonition so far as as possible in the conduct of cases coming before it under the Industrial Act.

From what has been said it necessarily follows that the award in this case cannot be upheld. It is therefore ordered and adjudged that the award made in favor of the applicant, including the expenses and fees hereinbefore referred to, be

set aside and annulled, and the proceedings dismissed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.