## OGDEN IRON WORKS et al. v. INDUSTRIAL COMMISSION et al.

No. 6476.  Decided December 22, 1942.  (132 P. 2d 376.)

---

[1]*Garfield Smelting Co.* v. *Industrial Commission,* 53 Utah 133, 178 P. 57; *Rockefeller* v. *Industrial Commission,* 58 Utah 124, 197 P. 1038; *Frederickson* v. *Industrial Commission,* 68 Utah 206, 249 P. 480; *Boyd* v. *Industrial Commission,* 88 Utah 173, 46 P. 2d 498; *Columbia Steel Co.* v. *Industrial Commission,* 92 Utah 72, 66 P. 2d 124.

See 64 C. J., Trial, sec. 1009; 28 R. C. L., 826.

*Moyle & Moyle* and *F. A. Trottier,* all of Salt Lake City, for plaintiffs.

*J. A. Howell,* of Ogden, *Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for defendants.

LARSON, Justice.

Certiorari to review an order of the Industrial Commission awarding compensation for the death of Harold Parkinson, an employee of the Ogden Iron Works. The review presents two questions: (1) Does the evidence justify the finding of the Commission that about March 24, 1941, Parkinson suffered an accidental injury while in the course of his employment? (2) If such injury was suffered, does the

record justify the finding that such injury was a proximate cause of the death of Parkinson? The factual basis for the award is as follows: Harold Parkinson, husband of claimant and hereinafter referred to as deceased, was, for about 17 years prior to March 28, 1941, an employee of Ogden Iron Works Company, hereinafter called the employer, and for years had worked at the boring machine. This was a heavy machine, resembling a lathe turned upside down. Much of the time the operator sits on a box or small barrel just under two heavy iron control levers, which he can readily reach up and grab with his hands, to adjust the machine. The table of the machine in front of the operator revolves, and is started or stopped by a switch on the side of the machine opposite that where the operator works. When necessary to stop the machine in a hurry the operator "must make a quick jump and run around  *  *  *  to shut it off." Across the machine and over the operator's head is a heavy rail which raises and lowers as the working of the machine is adjusted. Men working about this machine often bumped their heads on the levers, or on the rail. On the morning of the 24th of March, deceased went to work, apparently in good health. Just after work commenced at the plant, another workman, passing the boring machine, saw deceased sitting on the box he used for a seat when working, slumped over and holding his head in his hands. That night, when deceased arrived home he complained of a bad headache and had a bump about the size of a thumb on the left side of the head near the frontal-parietal suture. On his way to work on March 28th, he stopped at the Arden Dairy. As he walked in with a jug for milk he fell unconscious in the doorway. He was taken to the hospital, where he regained consciousness the next day. He died at the hospital on April 6 from the effects of a cerebral hemorrhage in the right side of the frontal lobe and bilateral hypostatic pneumonia.

Let us turn now to some of the evidence involved in the questions in the case. We note three instances of evidence which the employer claims should be disregarded as hear-

say. When deceased came home from work the day of the claimed accident, he immediately asked his wife for aspirin tablets and took two of them. She gave him the mail to look at, but he threw it down and said: "I can't see a damn thing, my head hurts me too bad." Later at dinner, all at once he grabbed his head and went down on the table with his elbows. Asked what was the matter, he said, "My head is driving me crazy." When his wife asked "What in the world could cause you to have such a headache?" He answered, "I gave my head a hell of a crack on the machine down there today." When she went over and rubbed his head she felt a bump the size of her thumb on the left side.

Another incident related was at lunch time on the day of the claimed accident. Although a jovial fellow and a hearty eater, on this day at lunch he was quiet and did not each much, but he did say, according to others eating there, "I got a dirty bump on the head," and as detailed by the witness Sparrow:

"I was sitting on the box that he generally sits on and when I got up he says 'George be careful because I raised up there quick and it gave me a hell of a bump'. * * * He wanted to warn me not to raise up too quick because that lever was right over my head."

The third incident was on the fourth day before his death, about nine days after the accident, when at the hospital he said to his wife, "I'm a gonner" and then said he wanted to see Williams (the boss or mill superintendent at the plant) because he wanted "to report that accident, the bump he got at the mill."

The employer contends that these statements constitute the only evidence that deceased sustained an accident at his work; that they are hearsay, and cannot be considered by the Commission, and therefore the finding that he sustained an accident in the course of his employment is not sustained by any competent evidence. The claimant argues that these statements fall within exceptions to the hearsay rule, and may properly be considered by the Commission.

The real issue therefore is: Was the hemorrhage the result of a bump on the head received on the 24th day of March,

1. Does the evidence justify a finding that deceased, on March 24th, while in the course of his employment at the boring machine, bumped his head? There is no testimony of any eyewitness to the bump, and deceased made no report thereof to the management of the employer. There is considerable evidence in the record from divers witnesses as to statements made by deceased about bumping his head while at work on March 24th. Are statements such as shown above incompetent as hearsay? To what extent does the rule against hearsay apply to proceeding before the Industrial Commission? The law with respect to evidence before the Commission is governed by Sec. 42-1-82, R. S. U. 1933, as follows:

"Rules of Evidence Before Commission.

"The commission shall not be bound by the usual common law or statutory rules of evidence, or by any technical or formal rules of procedure, other than as herein provided; but may make its investigations in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title." (C. L. 1917, Sec. 3149.)

This section plainly changes the rule of evidence in cases within the Act. It authorizes the Commission to receive and consider any kind of evidence that may throw light on a pending claim. The statute, however, does not declare the probative force of any evidence, but declares the aim and end of the investigation shall be to "ascertain the substantial rights of the parties and to carry out justly the spirit of this title." Much could be said in favor of a thesis that the Commission could act and base an award upon any kind of evidence; that since the Act authorizes the Commission to receive hearsay evidence, such in proceedings before the Commission becomes legal and competent evidence, and therefore an award may be based thereon. When the legislature sanctioned the admission of this evi-

dence, it follows by necessary implication that it intended to authorize the Commission to act upon it. But since the action of the Commission results in a determination of the substantial rights of the parties this court has long been committed to the position that there must be a residuum of evidence, legal and competent in a court of law, to support a claim before an award can be made, and a finding cannot be based wholly upon hearsay evidence. *Garfield Smelting Co.* v. *Industrial Comm.*, 53 Utah 133, 178 P. 57; *Rockefeller* v. *Industrial Comm.*, 58 Utah 124, 135, 197 P. 1038; *Frederickson* v. *Industrial Comm.*, 68 Utah 206, 249 P. 480; *Boyd* v. *Industrial Comm.*, 88 Utah 173, 46 P. 2d 498; *Columbia Steel Co.* v. *Industrial Comm.*, 92 Utah 72, 66 P. 2d 124. To say the Commission may receive and consider and act upon hearsay evidence, does not mean that the Commission is obliged to act upon all hearsay evidence presented, but only that it may act upon it where the circumstances are such that the evidence offered is deemed by the Commission to be trustworthy. Legislation such as this Act, made with a view to further social interests, must be interpreted not only from the juridical, but also the social point of view, and so as to give material justice its due, while formal jurisprudence has to stand back. There should be no anxious clinging to a dead letter; the interpretation should be liberal and in keeping with the spirit of the legislation. In this statute we have not only an explicit sanction for a departure from the common-law methods of proof, but a direct legislative command that the Commission "shall not be bound by the usual common law or statutory rules of evidence." In the face of this legislative provision, what justification is there for rendering the law subject to technical common-law rules of proof? The difficulty in proving the cause of death or of an injury, where the person injured dies as a result thereof, has long been recognized. In the instant case, the injured man, suffering from a severe headache and a bump on his head was asked by his wife what caused it, and replied that he had given his head a "hell of

a crack" at work. He made the same explanation to his doctor. The evidence of these people is now the only evidence available which can explain the bump on the head, the headaches, and the hemorrhage. Then again, there is the statement of the witness Sparrow, cited supra, that when on the day of the accident he was sitting under the levers on the box at the boring machine and started to arise, deceased shouted to him to be careful because when he (deceased) got up quickly he gave his head a dirty bump. This statement was in no sense a narrative, but a spontaneous outburst of warning to one in an apparent danger. The Commission examined and cross-examined these witnesses, and may well have been satisfied that they correctly reported what the injured man had related, and believed it was correct. In *Travellers' Ins. Co.* v. *Mosley,* 8 Wall. 397, 19 L. Ed. 437, the question was whether the assured died from the effects of a fall down stairs in the night or from natural causes. Assured had left his bed between 12 and 1 o'clock at night, and it was held that his declarations to his wife, when he came back, that he had fallen down the stairs and hurt himself badly were competent (even in a court of law) and sufficient proof of the fall because they were made so soon thereafter as to be in the nature of res gestae. The evidence was, nonetheless, the narrative by a person since deceased of a past, although a recent event. The New York Court in *Greener* v. *General Electric Co.,* 209 N. Y. 135, 102 N. E. 527, 528, 46 L. R. A., N. S., 975, said,

"the distinction to be made is in the character of the declaration, whether it be so *spontaneous, or natural,* an utterance as to exclude the idea of fabrication, or whether it be in the nature of a narrative of what had occurred." (Italics added.)

May we not hold that the Commission may base an award upon evidence under the exceptions to the hearsay rule most favorable to the claimant? In any event the evidence was legal and admissible. If it had any probative force, its weight was for the Commission as triers of fact and their

decision thereon was final. See also Columbia Steel case, supra.

This Court has uniformly held that hearsay testimony is admissible, but just as uniformly held that a finding of fact cannot be based solely upon hearsay evidence. See *Garfield Smelting Co.* v. *Industrial Comm.*, supra; *Rockefeller* v. *Industrial Comm.*, supra; *Frederickson* v. *Industrial Comm.*, supra; *Boyd* v. *Industrial Comm.*, supra; *Columbia Steel Co.* v. *Industrial Comm.*, supra.

But since hearsay is properly admissible and may be used and resorted to by the Commission to assist it in arriving at the real facts (*Columbia Steel Co.* v. *Industrial Comm.*, supra) and the Commission may pursue any course or method which to it seems best calculated to arrive at the truth, it may have recourse to hearsay evidence leading to some tangible fact which sheds light upon the ultimate question to be determined and found. *Garfield Smelting Co.* v. *Industrial Comm.*, supra; *Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435, 113 N. E. 507, Ann. Cas. 1918B, 540. As pointed out in the cases cited above the legislature has provided that the Commission is not bound by the rules of evidence recognized by the common law (Sec. 42-1-82, R. S. U. 1933) and as this Court has repeatedly held that hearsay evidence is properly admissible, it must follow of necessity that the Commission may consider and act upon it, but that standing alone, without any residuum of legal evidence to support it, it will not sustain a finding. What then is its purpose and effect? Clearly it is corroborative in its nature and value. Like circumstances and actions of persons apart from the specific act involved, it may serve as supplemental proof or corroborative proof of facts shown or properly inferable from facts shown by legal evidence, which legal evidence, standing alone, may not be sufficient to satisfy the Commission. Or such hearsay evidence may be so satisfying and convincing to the Commission that when supported by a residuum of evidence competent in a court of law, it may justify the Commission

in inferring a principal fact. It should not be said that all evidence held to be objectioable in courts of law is without probative force. The rules of exclusion in the law of evidence as applied in court of law is largely a result of the jury system. Its purpose is to keep from the jury all irrelevant matters, and collateral matters, which might tend to confuse or mislead the jury from a consideration of the real questions involved. So when the jury is absent the rules of exclusion are less strictly enforced, the assumption being that the Court will not be confused or misled by that which is irrelevant and inconclusive. And where the statute has expressly done away with the rules of common law as to evidence, and provided the Commission shall make such investigation as it may deem necessary to arrive at the truth and ascertain the substantial rights of the parties, hearsay evidence may be considered by it in determining a question of fact, whenever the circumstances of the case are such as to entitle it to credit, irrespective of any credit reposed in the speaker. In *Columbia Steel Co.* v. *Industrial Comm.,* supra [92 Utah 72, 66 P. 2d 128], we said:

"The limitation placed upon the Industrial Commission is that it shall not base its findings or decision *wholly* upon incompetent, immaterial, and irrelevant testimony. At times hearsay may throw light upon the general situation in an industrial case, sometimes things that are incompetent and immaterial, in so far as basing a decision upon such matters is concerned, may be helpful to the commission in understanding the situation and interpreting evidence that is material, substantial, and competent. This was evidently the purpose of the Legislature when the statute was enacted." (Italics added.)

Thayer "Preliminary Treatise in Evidence at the Common Law", p. 523. And such is the effect of all the holdings of this Court cited supra.

Since the rule against hearsay does not apply in proceeding before the Commission, which may receive and consider hearsay evidence, it matters not whether the foregoing statement comes under any exception to the hearsay rule. The question is whether there is any evidence, competent

in a Court of law, which when supported and corroborated by the hearsay evidence, justifies or sustains the findings of the Commission. There is legally competent evidence, not hearsay, that deceased went to work on the morning of March 24th, in his usual health, without any pain or trouble in his head; that men working around the boring machine frequently bumped their heads on the levers or the rail; that shortly after starting work he was sitting upon the box where he worked, slumped over, holding his head in his hands, and complained that his head and leg hurt; that when he returned home that evening he had a bump on the left side of his head; that he had a severe headache; that for the next four days he had severe headaches; that on the morning of the 28th he fell over unconscious; that he died on April 6th from a cerebral hemorrhage in the right side of the frontal lobe; that there was no aneurism, arteriosclerosis, or other pathology in the brain that could account for a hemorrhage especially in that area; that when the head in movement strikes a fixed object, the injury to the head frequently occurs on the opposite side of the head, in line with the direction of the blow, called a contrecoup; that this hemorrhage occurred in the probable line of force of a blow at the point where the bump was received by suddenly raising the head and striking it against a fixed object over and to the left side of the head; that the most probable cause of this hemorrhage was the bump on the head. We are not prepared to say that the Commission could not, from these facts infer and find that the bump on the head was received while at work at the boring machine and that such bump caused the hemorrhage, from which deceased died. In the Garfield Smelting case, supra [53 Utah 133, 178 P. 63], we said:

"Defendant's counsel are in error in their contention that the finding that the deceased died from an injury which was caused by an 'accident arising out of and in the course of his employment' is based entirely upon hearsay evidence. At least one witness testified that he was with the deceased when he received the injury which ultimately caused his death. True, the witness said he did not remember which

finger, or whether it was on the right or the left hand that the deceased was injured. That, in view of the other evidence, is of no great moment. There is no evidence whatever, or even any fact from which a legitimate inference could be deduced, that the deceased was injured elsewhere or otherwise than as stated by the witness just referred to. Indeed, there is some evidence to the effect that the deceased was not otherwise injured. As the evidence now stands, therefore, the only legitimate inference is that the deceased was injured precisely as stated by the witness, and in view of all the other evidence the inference is again more than merely persuasive that the injury actually resulted in death. The finding that is assailed is therefore clearly and sufficiently supported by substantial and competent evidence."

Here where there is so much evidence, competent in a court of law, backed up and corroborated by the statements above set out, and attacked as hearsay, we cannot say the findings of the Commission do not find support or justification in the evidence. The award of the Commission is affirmed.

MOFFAT, C. J., McDONOUGH and WOLFE, JJ., and WILL L. HOYT, District Judge, concur.

PRATT, J., on leave of absence.