496 P.2d 712

**Charles J. PRUCE, Plaintiff,**

v.

**FRUEHAUF CORPORATION et al.,
Defendants.**

No. 12650.

Supreme Court of Utah.

April 25, 1972.

Robert A. Echard, Ogden, for plaintiff.

Robert W. Brandt, Robert W. Miller, Salt Lake City, for defendants.

HENRIOD, Justice:

Review of a Utah Industrial Commission's denial of an award upon a claim for injury to an eye by way of a detached retina allegedly caused while the applicant, Pruce, a 17-year employee of Fruehauf, was in the process of cranking down a trailer support. Affirmed.

Applicant says 1) the Commission's Hearing Examiner erred in admitting hearsay evidence, 2) that the Commission's findings were not supported by the evidence, and 3) were in violation of its own rules and the spirit of hearings under the Workmen's Compensation Act. We conclude that none of the points on review is well taken, after examining the admissible, believable facts viewed in support of the Commission's denial, and the observations abstracted as follows:

The injury allegedly occurred about May 1, 1968. Pruce was covered not only under Workmen's Compensation for occupational injury but under an accident and health policy with Connecticut General Life for nonoccupational hazards. He had filed claims prior to the present incident, under both policies, for injuries covered by each. He conceded that he knew the distinctions between the policy types. Pruce had been treated off and on by Dr. Rees for eye ailments since 1955. He said he reported the injury to his employer immediately after the accident. However, he signed no claim. On May 6 he saw Dr. Rees, who diagnosed the injury as a detached retina, after which Pruce was hospitalized, and an operation performed. Pruce at no time told his doctor of the industrial accident. Dr. Rees said that at that meeting, Pruce was accompanied by his wife, who said that he had had problems with his eyes for six weeks prior to the incident. This assertion was denied by both Pruce and his wife at the hearing in this case some 18 months later. Counsel for applicant urges that admission of Dr. Rees's testimony at the hearing, duly objected to, with respect to what Mrs. Pruce said, was hearsay[1]

1. Although Dr. Rees, on cross-examination, modified his assertion somewhat, he did not abandon it. The hospital records and his professional notes about the time of the visit, substantiated the conclusion which Pruce and his wife chose to contest 18 months later. The wife's statement is reconciled by the significant fact that Pruce did not tell Dr. Rees anything about an industrial accident.

372

(which is true), was unsupported by any other evidence (which is not true),[1] and that it was error (with which we do not concur). This contention of inadmissibility was one of the main thrusts of applicant's appeal to this court, to which point a considerable portion of the brief is dedicated.

■ After the visit mentioned and the hospitalization, and discharge on May 18, 1968, and on May 24, 1968, six days later, Pruce filed a claim with Connecticut, stating his injury and that it was not the result of his employment. On this basis, Connecticut paid doctor, hospital and disability benefits until Pruce returned to work early in July 1968. In the meantime he had told nobody nor anyone in an employer's supervisory capacity of any claim for employment-connected injury. For the first time he told his foreman of such claim after having been paid by Connecticut and learning that *all* of the doctor's bills would not be paid. Almost a year and a half later, on December 31, 1969, he filed a claim with the Commission for benefits arising out of an *occupational* injury,— and there is nothing in the record to indicate that thereafter he tendered back to Connecticut the amounts the latter paid out on his behalf, and there was nothing at the oral argument that indicated otherwise,— except, perhaps a suggestion that such tender would have been made had the Commission granted him an award.

The applicant's problem was referred to a Medical Panel of three doctors at a hearing had on April 8, 1970. The panel was asked by the Commission whether as a reasonable medical probability the episode was the *sole* cause or a *precipitating factor* of material consequence. The panel report, to which defendants objected, said that as a reasonable medical probability, the episode would be the *conspicuous* cause of the detached retina. The answer obviously was somewhat unresponsive, but assuming otherwise, Dr. Rees, applicant's own personal opthalmologist for many years, who had interviewed Pruce, examined him and operated on him, emphatically took issue with the panel report, and quite reluctantly testified, as the record reflects, that his patient's detached retina was not the result of trauma suffered in the cranking down incident,—but rather that of progressive degeneration or autolysis. He explained his conclusion with expertise specificity. Although applicant's counsel quite naturally disagreed with Dr. Rees's diagnosis and agreed with that of the panel, whose report was about as hearsayish as anything else in this case, and structured on reports given to it a couple of years later, plus the facts that the applicant properly did not report the injury to his employer under statutory requirements as the record will reflect, plus the fact he did not tell his own personal doctor about the incident, plus the fact he accepted benefits under a nonoccu-

pational private insurance policy[2] with no evident offer of restitution for what applicant must now logically concede to have been a claim which was false, albeit, perhaps, unintended, plus the protraction in ultimately filing a claim with the Commission, on an entirely different theory based on identical facts, plus the fact that the Hearing Examiner and the three Industrial Commissioners and his own physician concurred in rejecting his theory, plus other circumstances which no useful purpose would be served in further recitation here, make it inescapable for us to do other than affirm the order of the Commission under accepted principles of appellate review,— which we hereby do.

 As to 1) applicant's argument with respect to admission of hearsay evidence constituting error, and in support of such argument's rejection, we refer to Title 35-1-88, Utah Code Annotated 1953, and Ogden Iron Works v. Industrial Commission, 102 Utah 492, 132 P.2d 376 (1942). As to 2) its urgency of insufficiency of evidence and 3) the Commission's violation of its own rules, we refer to the record with its contradictions. We renege on the proposition that the facts must be reviewed in a light most favorable to the applicant, as is urged by appellant in the brief, but re-assert the principle that they are to be canvassed so as to support, if possible, the exercised discretion of the Commission, which principle is recognized and upheld both statutorily and by decisional precedent, calling for affirmance unless an obvious abuse thereof has been indulged.

CALLISTER, C. J., and TUCKETT, ELLETT and CROCKETT, JJ., concur.

2. Frank and Company v. Industrial Comm., 27 Utah 2d 301, 495 P.2d 821 (1972).