STATE of Utah, Plaintiff and
Respondent,

v.

Timothy Phillip MILLER, Defendant
and Appellant.

No. 19663.

Supreme Court of Utah.

Oct. 29, 1985.

Gregory M. Warner, Provo, for defendant and appellant.

David L. Wilkinson, J. Stephen Mikita, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The appellant in this action, Timothy Phillip Miller, was convicted by a jury of sexually abusing a child.[1] He makes three assignments of error on appeal: (1) the trial court erred in excluding certain psychiatric expert testimony; (2) the trial court erred in excluding testimony from appellant's character witnesses concerning specific instances of his moral behavior toward children; and (3) the evidence is insufficient to support the verdict. We affirm.

The testimony at trial established the following facts. The appellant and the victim lived in the same condominium complex at the time of the alleged offense. On

---

1. U.C.A., 1953, § 76-5-404.1, provides:

   A person commits sexual abuse of a child, if, under circumstances not amounting to rape of a child, object rape of a child, or sodomy upon a child ... the actor touches the anus, buttocks, or genitalia of a child who is under the age of 14, or touches the breast of a female child who is under the age of 14, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

June 3, 1983, the victim, age 12, was playing at the appellant's home with his daughter. The victim apparently took some money belonging to one of the appellant's sons from a dresser in the home. When Mrs. Miller discovered the money was missing, she blamed her daughter, and "grounded" her. The victim, who felt guilty about taking the money, called her mother home from work, and after consulting with her returned the money. The two girls were then permitted to play together again, and there was no evidence of any bad feelings between the Millers and the victim and her mother.

The Millers had pitched a tent in their backyard, and the Miller child invited the victim to spend the night with the family in the tent. That evening, the victim's mother took the two girls to the car races and out to eat. They returned home around midnight. The victim changed into her pajamas and then joined the appellant, his two sons, and his daughter in the tent. Mrs. Miller, who was more than eight months pregnant, spent the night inside.

The appellant's daughter and the victim slept next to each other, with the victim sleeping next to the tent door. The appellant's sleeping bag was in the corner of the tent opposite the two girls. The victim stayed the night and returned home the next morning in her pajamas. She was cold and shaking when she arrived. She got into bed with her mother and they both slept until later in the morning. The victim's mother arose between 9:00 and 10:00 a.m. and showered. The victim then told her mother the appellant had sexually abused her. They discussed what had happened and then went to the police station to report the incident. The appellant was subsequently arrested.

On direct examination at trial, the victim testified that before she fell asleep in the tent, sometime after 1:00 a.m., the appellant left his sleeping bag and lay down between the two girls. She said he tickled his daughter, then turned to her and put his hand down her sleeping bag and "was rubbing in between my legs. And then he put his hand inside my pants and was rubbing my bottom. And then he went in between my legs and was going towards the front." The victim testified she started "wiggling" and told the appellant's daughter that her father was "tickling" her. The appellant stopped touching her and returned to his sleeping bag. This incident lasted approximately "five minutes" according to the victim.

The victim testified she did not cry out or object in any way other than that mentioned above because she was afraid. She also testified she was afraid to go home in the dark, even though her house was only half a block away and she thought the door was probably unlocked. Her mother testified she always left the door unlocked at night when the victim was out.

The victim further testified she was awakened very early the next morning by the appellant who had his hand inside her underwear again rubbing between her legs. This incident lasted approximately three minutes. She pretended to be asleep and started wiggling until the appellant turned away. After this incident, she went back to sleep for a few minutes. When she awoke, she told the appellant's daughter she would be back; then she left, arriving at her home around 6:00 a.m., according to her testimony and that of her mother.

When she arrived home, she climbed into bed with her mother, who testified at trial that she was cold, "clammy", and "trembling all over." The victim did not tell her mother what had happened until after she awoke, walked back to the Millers to get her clothes, and returned home. She testified that she waited, even though she had seen a movie at school called "You're in Charge" which instructs children to immediately report any incident of sexual abuse, because she was confused and scared. The appellant did not warn the victim not to tell anyone what happened in the tent and there was no evidence he spoke to her during the incident.

The appellant testified at trial to a very different version of events. He admitted that he tickled both his daughter and the

victim, but that he only tickled them in the ribs, under their arms, outside their sleeping bags and night clothing. His daughter's testimony corroborated this version of the first incident. Both testified that the appellant was bent over the girls and not lying between them. However, it was not entirely clear from the daughter's testimony whether she could see the victim. The appellant also testified that he slept through the night and did not awaken until his son came at 7:00 a.m. to tell him his boss was on the phone and wanted him to go to work. He left the tent to answer the call and did not return. He testified that the victim was asleep in the tent when he left, although both the victim and her mother testified that she came home around 6:00 a.m.

At trial, the appellant sought to introduce the expert testimony of Dr. Robert J. Howell. A proffer of his testimony was made outside the jury's presence. Dr. Howell would have testified about two matters. First, he would have described the typical psychological profile of individuals who sexually abuse children. The court excluded the testimony on the grounds that it was speculative and would be confusing to the jury. The judge expressed concern that the jury would shift its attention in deciding the case from whether or not the appellant had committed the crime to whether or not the prosecution had proven that the appellant fit within the typical psychological profile of a child abuser.

The second matter about which Dr. Howell would have testified is the tendency, in his opinion, of prepubescent girls, and to a lesser extent boys, to interpret certain situations as sexually threatening to themselves when the circumstances are actually completely innocent. The court excluded this testimony on the ground that it was irrelevant, since the issue was whether the appellant had touched the victim's genitals and not how she may have interpreted an ambiguous set of circumstances.

The appellant also sought to introduce character evidence regarding his past moral conduct toward children. The court refused to permit this evidence, but allowed character evidence regarding the appellant's reputation for truthfulness.

We treat first the appellant's claims of error respecting the expert testimony of his witness, Dr. Howell. The proffer in the record shows that the witness was a forensic clinical psychologist with expertise in sexual abuse of children, both from a research and a treatment perspective. Defense counsel proffered that the witness would testify that there is a typical psychological profile for sexual offenders who abuse young children and that such individuals generally have one or more of the following characteristics: (1) they suffer from organic brain damage or other mental disorder; (2) they have a history of sexual assaults that manifests itself before the age of 30; (3) they are under the influence of alcohol or drugs at the time the assault is committed; and (4) they are depressed.[2] It does not appear that Dr. Howell had examined or treated the defendant, and defense counsel in the course of his proffer to the trial judge admitted that "[neither] Dr. Howell nor anyone here could say whether the defendant does or does not necessarily fit into [the categories] ... But I think it's up to the jury whether they believe, in fact, the defendant's character falls within the framework of Dr. Howell's testimony." The defendant apparently intended to offer independent testimony demonstrating that he did not possess any of the characteristics described in Dr. Howell's profile. The trial judge expressed concern over the tendency of such testimony to mislead and confuse the jury, by suggesting that the issue to decide was whether the defendant possessed or did not possess the characteristics of the typical perpetrator of sexual abuse of children, rather than whether the defendant performed the acts the victim said he did. We

**2.** The actual proffer at trial was more general than this description, which was set forth in appellant's brief.

agree that the key question for the jury was whether the defendant or the victim was telling the truth about the events that gave rise to the charge. The testimony of the victim and the appellant differed sharply; neither described ambiguous circumstances.

■ The trial judge also apparently concluded that the proffered evidence was irrelevant, a conclusion with which we cannot agree. Rule 404(a), Utah R.Evid., specifically permits an accused to offer "[e]vidence of a pertinent trait of his character." for the purpose of "proving that he acted in conformity therewith on a particular occasion." The testimony from Dr. Howell, in conjunction with the proffered testimony from the appellant, would have been relevant to a pertinent trait of his character, namely, the incongruity of his personality traits with those of individuals capable of and likely to commit sexual offenses against children. Notwithstanding the relevance of the evidence, however, the trial judge was within the scope of his discretion in excluding it under the provisions of Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury...." As the fourth circuit court commented in *United States v. MacDonald*, 688 F.2d 224 (4th Cir.1982), with reference to very similar evidence:

> At the outset, we must recall that the appraisal of the probative and prejudicial value of evidence under Rule 403 is entrusted to the sound discretion of the trial judge; absent extraordinary circumstances, The Court of Appeal, will not intervene in its resolution. E.g., *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (exclusion of expert testimony to be sustained "unless manifestly erroneous"); *United States v. Masters*, 622 F.2d 83, 87–88 (4th Cir.1980) (reversed only if decision is rendered "arbitrarily or irrationally").

*Id.* at 227–28. In the context of the evidence in this case, the trial judge's decision

to exclude expert testimony about the behavioral and personality characteristics of a "typical" child sexual offender was not arbitrary or irrational. The trial court exhibited a reasonable concern that the tendency to confuse the issues or mislead the jury outweighed the probative value of such evidence.

■ The second portion of Dr. Howell's proposed testimony related not to the character of the accused, but rather to the character or credibility of the victim. The proffer indicates that Dr. Howell intended to tell the jury that, in his expert opinion, prepubescent children often misinterpret nonsexual encounters in a sexual fashion, because of their developmental preoccupation with their own bodies. The trial judge inquired carefully into the scientific basis for the opinion and examined with counsel the evidence in the case to which it could conceivably be relevant. He based his ruling on the view that the significant disparities in the factual testimony of the victim and the appellant provided no predicate for expert testimony on the possibility of "misinterpretation." The appellant testified that he tickled the victim under her arms, over her nightgown, and outside of her sleeping bag, on one occasion only. The victim testified that he placed his hand inside her sleeping bag, under her panties and below her nightgown, that he fondled her inner thighs, her buttocks, and her vaginal area, and that he returned later and repeated his actions. Given that disparate testimony, we believe that the trial judge's decision to exclude the expert's opinion as irrelevant, misleading, and speculative was not manifestly erroneous.

The appellant's second claim of error cites the trial court's refusal to admit what appellant characterizes in his brief as "evidence as to his reputation for [sexual] morality." He correctly argues that Rule 404, Utah R.Evid., permits the use of evidence of the good character of the accused where such evidence would tend to influence the fact finder respecting his guilt or innocence

of the crime charged.[3] He fails, however, to deal with the restrictions placed upon the available methods of showing good character contained in Rule 405. The first paragraph of that rule provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." The second paragraph makes it clear that proof of character by evidence of specific instances of conduct is permissible *only* when "character or a trait of character of a person is an essential element of a charge, claim, or defense."[4] Since the defendant's character is not an element of the crime of sexually abusing a child, the appellant was limited to reputation or opinion testimony to prove good moral character. An examination of the proffer from counsel contained in the record shows that the specific evidence sought to be admitted was of past instances of conduct, not opinion or reputation testimony. The following exchange between the trial judge and counsel demonstrates this conclusion:

> The Court: What are the "pertinent traits" you would show?
>
> [Defense Counsel]: Essentially, he was seen playing with the children, but this

sort of activity has never occurred before. And I think it's up to the jury to determine whether or not they believed it occurred this time.

■ The appellant offered and the court permitted opinion and a reputation testimony respecting appellant's honesty and truthfulness. That evidence went to his credibility as a witness. He made no attempt to offer opinion and reputation testimony respecting moral character, although it is clear from the record that the trial judge would have permitted such evidence if it had also been offered. The trial court's exclusion of specific instances of conduct was entirely consistent with Rule 405 and was not erroneous.

■ The final claim of error relates to the sufficiency of the evidence. Appellant's brief emphasizes discrepancies in the evidence and the inherent credibility he claims for his own testimony as opposed to that of the victim and her mother. The parties agree upon the applicable standard of review in an appeal based on insufficiency of the evidence:

> In considering that question, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the

**3.** The Advisory Committee's Notes to Federal Rule of Evidence 404, which is identical to our rule, contain the following explanation:

> Character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character. This use of evidence is often described as "circumstantial." ... In most jurisdictions today, the circumstantial use of character is rejected but with important exceptions: (1) an accused may introduce pertinent evidence of good character (often misleadingly described as "putting his character in issue"), in which event the prosecution may rebut with evidence of bad character; ... and (3) the character of a witness may be gone into as bearing on his credibility. McCormick § 155–161. This pattern is incorporated in the rule. While its basis lies more in history and experience than in logic an underlying justification can fairly be found in terms of the relative presence and absence of prejudice in the various situations. (Citations omitted.) In any event, the criminal rule is so deeply embed-

ded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the relevancy of the evidence.

**4.** The Advisory Committee Notes to Federal Rule of Evidence 405 state:

> [T]he rule confines the use of evidence [of specific instances of conduct] to cases in which character is in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially ... proof may be only by reputation and opinion.

The Advisory Committee Notes to Federal Rule 404 illustrates true "character in issue" cases:

> Character may itself be an element of a crime, claim, or defense. A situation of this kind is commonly referred to as "character in issue." Illustrations are: the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver. No problem of the general relevancy of character evidence is involved.... The only question relates to allowable methods of proof....

jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Petree*, Utah, 659 P.2d 443, 444 (1983) (citations omitted). We have read the entire transcript of the trial with care and have discussed the testimony in some detail in this opinion. The story told by the victim is coherent, internally consistent, and corroborated by the observations of her mother. There is nothing inherently incredible or improbable about that narration. The appellant failed to show that either witness had a motive for or the appearance of lying or fantasizing. The appellant's testimony was also straightforward and corroborated to some extent by his witnesses. Therefore, the only means of determining the question of guilt or innocence was by deciding whether the victim or the appellant was telling the truth. The jury obviously believed beyond a reasonable doubt that the victim's testimony was true, and there is no basis for our overturning that verdict.

The appellant also claims in his brief that one of the jurors was "sick" and that the jury "did not appear to understand the meaning of reasonable doubt." We have reviewed that portion of the record containing a discussion between the trial court and the jury regarding a migraine headache experienced by a juror during the initial deliberation session. We find no merit to the suggestion that there was anything improper or prejudicial about the jury's deliberations. The jury met for a second deliberation session during which there was no indication of illness or problems with any of the instructions. The individual jurors were polled on their verdict, and the record shows no defects therein.

Having determined that the trial court committed no prejudicial error and that there is sufficient evidence in the record to sustain the appellant's conviction, we affirm.

HOWE and ZIMMERMAN, JJ., concur.

HALL, C.J., and STEWART, J., concur in the result.