2008 UT App 270

**STATE of Utah, in the interest of G.C., a person under eighteen years of age.**

**J.C., Appellant,**

**v.**

**State of Utah, Appellee.**

**No. 20070815–CA.**

Court of Appeals of Utah.

July 17, 2008.

**56**

Colleen K. Coebergh, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and John M. Peterson, asst. atty. gen., Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

OPINION

GREENWOOD, Presiding Judge:

¶ 1 J.C. (Father) appeals from the juvenile court's order terminating his parental rights in his biological child, G.C. Father argues that the trial court erred in admitting evidence of his criminal history related to sex offenses. In addition, Father challenges several of the trial court's factual findings and legal conclusions regarding Father's overall fitness to parent. Finally, Father claims that the improperly admitted evidence of criminal history and sexual assault resulted in cumulative error. The State, on the other hand, argues that the trial court did not err in admitting evidence of Father's sexually violent and criminal past. Furthermore, the State asserts that Father failed to marshal the evidence necessary to effectively challenge the trial court's factual findings and, accordingly, that this court should presume there was no cumulative error. We affirm.

BACKGROUND

¶ 2 G.C. was born to Father and K.C. (Mother) on November 2, 2004. G.C. was first placed with the Division of Child and Family Services (DCFS) when he was approximately eight-months-old, after law enforcement officials went to his home and discovered Mother too intoxicated to properly care for him. DCFS took temporary custody and guardianship of G.C. following this incident. Shortly thereafter, a temporary custody hearing was held, at which G.C. was found to be dependent as to Father,[1] and the court, without full knowledge of Father's history, awarded supervised custody of G.C. to Father.

¶ 3 Subsequently, and despite having recently secured a protective order against Father, Mother again resided with Father and assisted him in caring for G.C. Father and Mother participated in both couples and individual counseling at that time and were also working with peer parents to attempt to improve their parenting abilities. About six months later, Father was taken into custody by the Immigration and Naturalization Ser-

---

**1.** A "Dependent child" is "a child who is homeless or without proper care through no fault of the child's parent, guardian, or custodian." Utah Code Ann. § 78–3a–103(1)(j) (Supp.2007).

vices (INS) because of a 1999 conviction for forcible sex abuse. Just ten days after Father was taken into INS custody, Mother overdosed on drugs while caring for G.C. and was arrested. Consequently, G.C. was placed in the care of family friends. Mother was sentenced to five years in the Utah State Prison based on her outstanding DUI warrants.[2] At the time Mother was incarcerated, Father remained in INS custody in Arizona awaiting deportation to Mexico. In light of the anticipated lengthy incarceration of both Mother and Father and the "substantial likelihood that [neither parent] w[ould] ... be capable of exercising proper and effective parental care [for G.C.] in the near future," the State filed a Verified Petition for Termination of Parental Rights.

### Father's Criminal History and INS Detention

¶ 4 Father, a native of Mexico, entered the United States as an illegal immigrant in 1985. In 1987, Father obtained status as a temporary resident and, by 1997, had secured permanent resident status. Father testified during the termination proceedings that he had since applied for citizenship.

¶ 5 In 1996, Father allegedly molested two different fifteen-year-old girls on two separate occasions. While both incidents were investigated by the police, Father was prosecuted for only one. Although Father was charged with second degree felony sexual assault, he pleaded guilty to a third degree felony and served his related sentence. Years later—in early February 2006—Father was taken into INS custody to await deportation to Mexico because of this conviction. As noted above, while Father was incarcerated the State petitioned the court to terminate Mother and Father's parental rights. Father remained incarcerated when the termination trial began. However, while still in INS custody, Father's aforementioned

sexual abuse conviction was vacated due to ineffective assistance of counsel.[3] As a result, Father was released from INS custody and the deportation proceedings were terminated in March 2007.

### Parental Rights Termination Proceedings

¶ 6 The State initially filed a Verified Petition for Termination of Parental Rights of Mother and Father, based largely on the incarceration of both. When the INS halted Father's deportation proceedings and released him as a result of the reversal of his conviction, the State filed an Amended Verified Petition (Amended Petition) to focus more precisely on other grounds supporting the termination of Father's parental rights. This Amended Petition included, for the first time, a detailed description of Father's history of domestic violence against both Mother and Father's former wife,[4] as well as Father's alleged assault of the two fifteen-year-old girls and conviction with respect to one.

¶ 7 Proceedings to terminate Mother and Father's parental rights continued for seven days over a ten-month period. Mother voluntarily relinquished her parental rights in G.C. after the first day of trial. Thus, the following six trial days focused solely on Father's parental fitness. Much of the evidence produced at trial was testimonial. Mother testified that she sought a protective order against Father—one of two she sought against him—after Father had repeatedly had intercourse with her while she slept. Mother further testified that Father had pushed her into a laundry room and ripped off her necklace during a fight about sex. In addition, both of Father's alleged molestation victims testified in detail about Father's sexually inappropriate behavior toward them. Although Father's testimony contradicted some of the alleged victims' testimony, the trial court specifically found the testimony of each girl to be credible and also noted that "[Father] was not a credible witness."

---

2. Although Mother was sentenced to five years, she served only eleven months and was released.

3. The State has since appealed the order vacating Father's conviction. That appeal remains pending separately before this court. *See Colin v. State*, No. 20070211–CA (Utah Ct.App. argued Mar. 27, 2008).

4. Both Mother and Father's former wife had successfully filed for protective orders against Father. Father was convicted for violating one of those orders. ·

¶ 8 Upon conclusion of the proceedings, the trial court made extensive findings of fact related generally to witness credibility and Father's parenting of G.C. Based upon these findings, the trial court concluded that Father is an unfit or incompetent parent and that he has (1) neglected or abused G.C.; (2) "substantially neglected, willfully refused, or . . . been unable or unwilling to remedy the circumstances that caused [G.C.] to be in an out-of-home placement;" (3) failed to make parental adjustment; (4) "made only token efforts to eliminate the risk of serious physical, mental or emotional abuse to [G.C.];" and (5) "substantially and continuously or repeatedly refused or failed to give [G.C.] proper parental care and protection" even after G.C. was temporarily returned to Father's supervised custody. In light of these conclusions, the trial court ordered Father's parental rights in G.C. permanently terminated. Father now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Father argues that the trial court erred in admitting evidence related to Father's alleged sexual impropriety with two fifteen-year-old girls nearly ten years earlier because that evidence was not relevant to his present ability to parent and was unduly prejudicial. Because "[a] trial court's rulings on the admission of evidence . . . generally entail a good deal of discretion[,] . . . [we] will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the trial court so abused its discretion that there is a likelihood that an injustice resulted." *State v. Powell*, 2007 UT 9, ¶ 13, 154 P.3d 788 (second and fifth alterations in original) (footnote and internal quotation marks omitted); *see also Vigil v. Division of Child & Family Servs.*, 2005 UT App 43, ¶ 8, 107 P.3d 716.[5]

## ANALYSIS

### I. Evidence of Father's Sexual Impropriety Was Properly Admitted

■ ¶ 10 Father first argues that the trial court erred in admitting evidence of his alleged sexual impropriety with the two teenage girls on two different occasions during 1996. Father asserts that the probative value of this evidence was greatly outweighed by its prejudicial effect, arguing that these alleged molestations were so remote in time that they were irrelevant to a determination of Father's present ability to parent G.C. The State argues that the evidence is clearly relevant to a determination of Father's parental fitness and that the trial court appropriately weighed the prejudicial and probative values of the evidence.

¶ 11 The standard for determining the relevance of evidence is exceedingly low; evidence with only the slightest probative value meets the test. *See* Utah R. Evid. 401 (defining relevant evidence as "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (emphasis added)). While relevant evidence is generally admissible, *see id.* R. 402, it may be inadmissible if the trial court determines that its admission would be unfairly prejudicial. *See id.* R. 403. In other words, when evaluating a claim that evidence is unfairly prejudicial, we are mindful that, while " 'all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered,' " relevant, damaging evidence can be excluded " 'only if the danger of *unfair* prejudice *substantially outweighs* the probative value of the proffered evidence.' " *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989) (emphases added) (quoting M. Graham, *Handbook of Federal Evidence* § 403.1, at 182–83 (2d ed.1986)). Juvenile courts are entrusted with broad discretion in determining whether a particular piece of evidence is both relevant and admissible. *See Vigil*, 2005 UT App 43, ¶ 8, 107 P.3d 716. In addition, we will reverse a trial court's evidentiary rulings only if we are ultimately convinced that the trial court's decision likely resulted in an injustice. *See Powell*, 2007 UT 9, ¶ 13, 154 P.3d 788.

5. Although Father argues other issues in his brief on appeal, our disposition of Father's evidentiary claim disposes of the remaining issues.

¶ 12 On appeal, Father argues that evidence of his alleged sexual impropriety was improperly admitted because it occurred several years before G.C. was born, and, even if relevant, the prejudicial impact of the evidence was so great that it substantially outweighed any probative value. Father's counsel objected to this evidence multiple times at the termination proceedings on the ground that it was not relevant. In response, the State argued that presentation of this evidence was necessary to "establish[a] pattern of sexual deviancy for [Father]" and "that it goes to [Father's] unfitness ... [and] to what would be . in [G.C.'s] best interest." The State further asserted that this evidence was relevant to show that Father has a history of violent behavior that has continued, even in the face of court involvement.[6]

¶ 13 Without question, Father's alleged history of violent and sexually inappropriate behavior toward minor females is a "fact that is of consequence to the determination of" Father's current parental fitness. *See* Utah R. Evid. 401; *see also* Utah Code Ann. § 78–3a–408(2)(b) (Supp.2007) (requiring courts to consider, among other things, "conduct *toward a child* [that is] physically, emotionally, or sexually cruel or abusive" to determine parental fitness (*emphasis added*)). Any testimonial evidence tending to make that fact "more probable or less probable than it would be without the evidence" is, by definition, relevant. Utah R. Evid. 401. In overruling Father's relevancy objection and admitting the testimonial evidence of Father's two alleged molestation victims, the trial court noted that Father's "history of violent behavior and ... sexual deviancy is certainly relevant with respect to the fitness [of Father] and [the] best interest of [G.C.]" We find no error in the trial court's relevancy determination.

¶ 14 Father also argues that the evidence, even if relevant, should have been excluded as excessively prejudicial. The juvenile court, however, heard ample testimony regarding Father's troubling history of alleged sexual and violent criminal behavior. Both of Father's alleged molestation victims gave detailed testimony about Father's actions toward them. Although Father testified to the contrary, the juvenile court specifically found that Father was not a credible witness and that the two victim-witnesses were credible. Juvenile courts are explicitly entrusted with this type of credibility determination, and their decisions thereon are afforded great deference. *See In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680 (stating that juvenile courts have "a wide latitude of discretion" regarding credibility determinations because they have the "opportunity to judge credibility firsthand" and are specially trained (internal quotation marks omitted)). There was also testimony by Mother regarding Father's more recent acts of sexual violence. The import of Father's pattern of abusive behavior was corroborated by a psychological examination during which Father "exhibited a total lack of ownership" for his past violent actions as well as by Father's recent violation of a protective order. Based on sufficient evidence, the juvenile court found that Father's violent and unstable behavior was likely to continue.[7] Further, as noted by the juvenile court, although there was no evidence of abuse of G.C. by Father, clearly Father's history of alleged sexual violence, if found to be true, is a detriment to his parenting ability and would not serve G.C.'s best interest. Thus, given the highly deferential standard for reviewing a trial court's evidentiary rulings, we cannot say that the trial court abused its discretion in admitting evidence of Father's sexual improprieties over Father's

6. In addition to presenting testimony from Father's alleged 1996 molestation victims, the State also presented Mother's testimony related to Father's history of domestic violence, including Father's conviction for violating a protective order Mother had secured against him.

7. Father complains that the court should not have allowed evidence of his criminal conviction because it was later vacated. To the contrary, the juvenile court relied on the in-court testimony of Father's alleged victims about his actions, not all of which resulted in criminal convictions. As noted earlier, those witnesses were deemed to be more credible than Father. We further note that, because Father's criminal conviction remains subject to appellate review, we do not rely upon that conviction in affirming the termination of Father's parental rights.

objection.[8]

## II. Juvenile Court's Factual Findings and Legal Conclusions Are Adequately Supported

¶ 15 Next, Father challenges the sufficiency of the evidence supporting the trial court's factual finding that Father had a history of sexually assaultive behavior that negatively impacted his present ability to parent. In order to properly challenge a juvenile court's factual findings, an appellant must first marshal the evidence in support thereof. *See* Utah R.App. P. 24(a)(9). Challenging parties must temporarily detach themselves from their own arguments and "fully assume the adversary's position." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991). Only after "present[ing], in comprehensive and fastidious order, every scrap of competent evidence" in support of the findings opposed on appeal will an appellant receive review of the allegedly erroneous factual findings. *Id.* Where an appellant fails to properly marshal the evidence, we will generally presume that the evidence presented at trial adequately supports the court's findings. *See Martinez v. Media–Paymaster Plus*, 2007 UT 42, ¶¶ 18–20, 164 P.3d 384.

¶ 16 Father's brief includes an incomplete account of the evidence presented at trial and relied upon by the juvenile court. Instead of carefully detailing all of the adverse evidence that supports the trial court's finding, Father presents and minimizes only a portion of that evidence. Father's brief also entirely omits much of the evidence relied upon by the trial court because Father thought it to be incorrectly classified as "criminal" evidence. Regardless of Father's objections to the classification of evidence, Father is obligated to present all the evidence upon which the trial court based its factual findings in order to receive appellate review of the same. Father's selective exclusion of unfavorable supporting evidence does not satisfy the marshaling requirement. Thus, we assume that the trial court's finding regarding Father's history was adequately supported.

¶ 17 Finally, Father seeks to challenge several, but not all, of the juvenile court's conclusions of law justifying termination of Father's parental rights in G.C. However, a juvenile court need only find one ground to support proper termination of parental rights. *See* Utah Code Ann. § 78–3a–407(1) (Supp.2007). The juvenile court in the present case found six separate grounds to warrant termination of Father's parental rights. *See generally id.* §§ 78–3a–407(1)(b)–(f), (h). On appeal, Father fails to challenge the trial court's conclusions that Father (1) "has made only token efforts to eliminate the risk of serious physical, mental or emotional abuse to [G.C.] or to avoid being an unfit parent" and (2) "after a period of trial during which [G.C.] was returned to live in the child's own home, substantially and continuously or repeatedly refused or failed to give [G.C.] proper parental care and protection." Because Father does not challenge the validity of these grounds—thus, essentially conceding the validity of the juvenile court's unchallenged conclusions—his attack on the juvenile court's other conclusions is futile.

## CONCLUSION

¶ 18 We conclude that the trial court did not abuse its discretion in determining that evidence of Father's sexually inappropriate history was relevant, and thus, admissible. In addition, we uphold the trial court's factual finding because Father has failed to marshal the evidence in support thereof. We also hold that Father's failure to object to all of the juvenile court's grounds for termi-

---

8. Father further argues that the erroneous admission of evidence of his violent and criminal past constitutes cumulative error. It is difficult to see how this argument is more than a reiteration of Father's direct challenge to the admission of the criminal history evidence discussed above. Nevertheless, in holding that the trial court did not abuse its discretion in admitting the evidence of Father's history of alleged sexual impropriety, we necessarily reject Father's claim of cumulative error.

nation renders Father's objection to several of the other grounds for termination unavailing. Finally, having determined there was no error in the trial court's disposition, it follows there was no cumulative error. Consequently, we affirm.

¶ 19 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.