**2016 UT App 217**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF M.W.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

M.W.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20150359-CA
Filed November 3, 2016

Third District Juvenile Court, Salt Lake Department
The Honorable Kimberly K. Hornak
No. 1113251

Monica Maio and Robert L. Donohoe, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and JILL M.
POHLMAN concurred.

MORTENSEN, Judge:

¶1     M.W., a minor, challenges the juvenile court's order
adjudicating him delinquent for committing one count of
sodomy on a child, an offense that would be a first degree felony
if committed by an adult. *See* Utah Code Ann. § 76-5-403.1
(LexisNexis Supp. 2016). We affirm.

¶2     In the summer of 2013, A.B. (ten years old) and M.W. (thirteen years old) were playing soccer on a field near A.B.'s home.[1] When the ball left the field of play, A.B. went to get it. After A.B. picked up the ball, M.W. grabbed him and pulled him down a nearby alleyway. Once in the alley, M.W. pulled down A.B.'s pants, forced him onto the ground, and inserted his penis into A.B.'s anus for about fifteen seconds. Afterward, M.W. told A.B. that if he told anyone, M.W. would "rape [A.B.] harder." A.B. ran home, but reported nothing to his father because he feared he would not be believed.

¶3     Before the assault, A.B. was a happy, well-adjusted boy inclined toward cuddling and giving hugs to his family, playing with friends, and often going to the nearby field to play soccer. But afterward, he was not the same. He started wetting his bed, complaining of anal pain, and withdrawing from family and friends. He seemed sad, thought that he could not "live any longer," and expressed suicidal thoughts. Whenever A.B. saw M.W., A.B. would act paranoid. A.B. thought M.W. was looking in the windows of his home and feared that M.W. was going to come in and grab him at night.

¶4     In the spring of 2014, in the presence of one or more peers, A.B. accused M.W. of raping him. M.W. confronted the issue by going to A.B.'s home to speak with A.B.'s parents about the accusation. At the door of A.B.'s home, M.W. appeared very nervous with his arms crossed and one of his legs constantly shaking. M.W. told A.B.'s father that A.B. was accusing him of rape. A.B. also came to the door, was visibly upset, pointed his finger at M.W., and repeated that M.W. "pulled down his pants and stuck his wiener in [A.B.'s] butt."

---

1. On appeal from a delinquency adjudication, we recite the facts in the light most favorable to the juvenile court's decision. *See In re J.F.S.*, 803 P.2d 1254, 1254 (Utah Ct. App. 1990).

¶5     The day after the front door confrontation, A.B.'s parents took him to Primary Children's Medical Center where A.B. was examined by a doctor (Doctor) certified in child-abuse pediatrics, which focuses on diagnosing and treating victims of sexual abuse. The examination included a medical interview of A.B. "to hear about what happened to guide [Doctor's] diagnosis and treatment." Doctor asked A.B. the reason for the visit, and he responded that he "was raped." When asked for more details, A.B. responded that it happened "[o]ne summer ago" and that a "kid named [M.W.]" "stuck his wiener in my butt."

¶6     The State filed a petition accusing M.W. of sodomy on a child. The juvenile court held a bench trial at which five witnesses testified. A.B. gave his personal account of the rape and identified M.W. as the perpetrator. A.B.'s father testified that M.W. came to their front door and told him about A.B.'s allegation. Both A.B.'s father and A.B.'s mother related additional information about the confrontation at the front door, including A.B.'s statement that M.W. "raped me." A detective who investigated the incident (Detective) testified that M.W. told her multiple times that A.B. had accused him of rape. M.W. does not appeal the admission of any of this testimony.

¶7     Additionally, Doctor testified concerning A.B.'s interview responses:

> Q. And as part of that medical history what did he tell you?
>
> A. Well, when I asked him that question he said, "I was raped." That was his answer.
>
> Q. Did you ask him any questions about that answer?
>
> A. I did. I asked him when this had happened. And he said, "One summer ago." And the meaning was

the summer of 2013. And I asked him who had done that. And he said, "A kid named [M.W.]"

[M.W.'s counsel]: Objection, your Honor, hearsay. Motion to strike.

The Court: Overruled. A doctor can rely upon out-of-court statements or inadmissible evidence in forming her opinion. Go ahead.

¶8    Doctor also opined that the changes in A.B.'s behavior, including bedwetting, mood changes, and the desire for self-harm, were consistent with a child who had been sexually abused. She confirmed that she did not find any physical evidence of abuse, but did not find this absence unusual given the time between the event and the exam.

¶9    M.W. did not testify at trial. However, the juvenile court allowed M.W. to play a recording of his interview with Detective wherein M.W. repeatedly denied A.B.'s accusation. In that recording the detective explained the story that A.B. had told:

> [Detective]: And he says that you grabbed him and took him into the alley next to the school and that you did rape him. And that's what he's telling me, and that's what he's telling his parents.
>
> . . .
>
> Well, I just - - I'm just wondering why he's telling me this.
>
> [M.W.]: I'm actually impressed by his ability to describe something that didn't, you know.
>
> [Detective]: Because he's, I guess he had an exam with the doctors. And also . . . it's a forensic exam

that we ask for. And he told the doctor[2] the same
thing that he's told me.

With Detective having just informed M.W. what A.B. had told
her, it is clear that the "same thing" means that M.W. raped him.

¶10     The juvenile court found beyond a reasonable doubt that
M.W. had committed sodomy on a child and entered a
disposition order. M.W. appeals, arguing that the juvenile court
erred by admitting and relying on Doctor's statement that A.B.
told her that M.W. had raped him. We review the juvenile
court's ruling on evidence for abuse of discretion. We "will not
reverse the [juvenile] court's ruling[s] on evidentiary issues
unless it is manifest that the [juvenile] court so abused its
discretion that there is a likelihood that an injustice resulted." *In
re G.C.*, 2008 UT App 270, ¶ 9, 191 P.3d 55 (citation and internal
quotation marks omitted).

¶11     M.W. further asserts that without Doctor's testimony,
there was insufficient evidence to find him delinquent. "When a
challenge to the sufficiency of the evidence is raised, '[w]e
review the juvenile court's factual findings based upon the
clearly erroneous standard.'" *In re J.C.*, 2016 UT App 10, ¶ 13, 366
P.3d 867 (quoting *In re S.O.*, 2005 UT App 393, ¶ 12, 122 P.3d
686) (alteration in original). Under that standard, we will set
aside the juvenile court's decision only if the decision is against
the clear weight of evidence or we form "a definite and firm
conviction that a mistake has been made." *In re S.L.*, 1999 UT
App 390, ¶ 20, 995 P.2d 17 (citation and internal quotation marks
omitted). Because of the advantaged position of the juvenile
court in assessing credibility and personalities, and also due to
the juvenile court judges' special training, experience, and

_____

2. It is unclear from the record whether the doctor referenced by
Detective was Doctor or another medical professional.

interest in their field and devoted attention to cases within their jurisdiction, we defer to the juvenile court and afford it wide latitude. *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680.

¶12 Even if we were to determine that the juvenile court erred in admitting the evidence, we will not disturb an adjudication if we conclude that the error was harmless. *In re P.N.*, 2011 UT App 221, ¶ 5, 262 P.3d 429 (citing *State v. Ramsey*, 782 P.2d 480, 485 (Utah 1989)). M.W.'s appeal fails because admission of the challenged evidence was harmless for two reasons.

¶13 First and foremost, M.W. offered essentially the same evidence himself. While claiming it was error for the juvenile court to allow Doctor to relate the person A.B. identified as the perpetrator, M.W. offered the recorded statement of Detective, which indicated that a doctor had told her that A.B. identified M.W. as the perpetrator. In other words, M.W. advances the argument that Doctor cannot testify as to the hearsay statement of A.B., yet in a different hearsay statement (a recording no less) of Detective, Detective can relate the hearsay statement of a doctor describing the same hearsay statement of A.B. The end result remains. M.W. put into evidence the same statement he now claims the juvenile court erroneously admitted elsewhere in the record.

¶14 Second, every other witness related the exact same information—that A.B. identified M.W. as the perpetrator. And M.W. himself provided the same information through other evidence. Therefore, the testimony of Doctor was merely cumulative and any error in its admission was harmless. *See In re J.M.*, 2006 UT App 158U, para. 2 ("[E]ven if the statements were inadmissible hearsay, their admission was harmless because the evidence was cumulative.").

¶15 Our determination that Doctor's testimony was harmless also resolves the question of whether sufficient evidence existed outside Doctor's testimony to support M.W.'s adjudication. The

testimony of Doctor disclosing that A.B. identified M.W. as the perpetrator was hardly the keystone of the State's case. And because identical evidence from other witnesses identified M.W. as A.B.'s assailant, there was sufficient evidence to adjudicate M.W. delinquent even if Doctor's testimony is ignored.

¶16    Affirmed.

_____