**2025 UT App 37**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF I.C.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

A.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20240667-CA
Filed March 13, 2025

Third District Juvenile Court, Salt Lake Department
The Honorable Aaron Flater
No. 1229910

Sara Pfrommer and Emily Adams,
Attorneys for Appellant

Derek E. Brown and John M. Peterson,
Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME,
MICHELE M. CHRISTIANSEN FORSTER, and AMY J. OLIVER.

PER CURIAM:

¶1      A.C. (Mother) appeals the juvenile court's order adjudicating I.C. (Child) as abused and neglected and its order denying Mother's motion for a new trial. We affirm.

BACKGROUND

¶2      In September 2023, Child disclosed allegations that she had been sexually abused by her older brother (Brother). In the course of forensic interviews following the disclosure, Child also revealed that she had attempted or considered suicide and that she had otherwise harmed herself. She also revealed conduct by Mother over the years that may be abuse. At the time, Child lived with Mother and Brother. After the allegations, however, Child's father (Father) placed Child in an in-patient therapeutic setting. After her release, she went to live with Father.

¶3      When Mother was notified of Child's disclosures by the Division of Child and Family Services (DCFS) and law enforcement, Mother stated that Child was making things up as retaliation against Brother for getting Child into trouble. She was not cooperative with DCFS regarding making a safety plan for Child and did not mind that Child would not return home. However, she was unsatisfied with Child going to live with Father and would rather have Child go to juvenile detention instead. Overall, Mother expressed little concern for Child or her welfare.

¶4      DCFS filed a petition seeking protective services for Child. The allegations in the petition were primarily regarding Mother's conduct and Child's disclosures of sexual abuse by Brother. Trial on the petition was set for Mother in late January 2024. About one week before the trial date, Mother's counsel filed a list of witnesses and exhibits expected to be presented at trial. Shortly before trial, Mother's initial counsel withdrew, and the trial was postponed.

¶5      New counsel appeared, and Mother's trial began in March 2024, but no new witness or exhibit list was filed. After day one of trial, another continuance was granted. Three additional days of trial were held in April 2024. On day three, Mother proffered testimony of three undisclosed witnesses she wanted to present

on day four of trial. Before day four, the State moved to exclude the witnesses as untimely disclosed.

¶6 On day four, Mother's counsel explained further the anticipated scope of testimony from the three witnesses. After discussion in court, two witnesses were permitted to testify regarding a conversation that may have impeached earlier testimony, and the third witness was excluded. The court noted that much of the proposed testimony was not proper impeachment and was not probative.

¶7 After trial, the juvenile court determined that the allegations in the petition were proven and that Mother had abused and neglected Child. Mother obtained new counsel and filed a motion for new trial. In the motion, she asserted that trial counsel had provided ineffective assistance, at least in part by failing to timely disclose a variety of exhibits in an extensive list. The juvenile court denied the motion. The court noted that the list of exhibits lacked sufficient information and that Mother had failed to demonstrate prejudice. Mother appeals.

ANALYSIS

¶8 Mother raises several issues in her petition, challenging both the denial of her motion for new trial and the underlying adjudication order. Regarding the adjudication order, Mother asserts that the juvenile court erred in excluding certain witness testimony discussed on day four of the trial. She also contends that the determination that she neglected Child was in error.

¶9 In the context of an adjudication trial, "we apply differing standards of review to findings of fact, conclusions of law, and determinations of mixed questions of law and fact." *In re K.J.*, 2024 UT App 47, ¶ 31, 548 P.3d 886 (cleaned up), *cert. denied*, 554 P.3d 924 (Utah 2024). "The factual findings underlying an abuse or

neglect adjudication are reviewed deferentially and are reversed only if clearly erroneous." *Id.* The court's "ultimate determination regarding abuse or neglect is reviewed for correctness, because making that determination, which involves applying a given set of facts to statutory criteria, is primarily a law-like endeavor." *Id.* (cleaned up). A juvenile court's ruling on the admission of evidence is reviewed for abuse of discretion. *See In re G.C.*, 2008 UT App 270, ¶ 9, 191 P.3d 55.

¶10 Mother contends that the juvenile court inappropriately excluded witness testimony that she asserts would have affected the credibility of other witnesses, particularly Child's testimony of specific instances of conduct by Mother. Mother's witnesses would have testified that they did not see the identified conduct; more broadly, they would have testified that they did not see similar types of conduct, nor did they see Mother mistreat Child in general. The juvenile court determined that the proffered testimony was not probative and was not proper impeachment evidence. Mother cannot show that the juvenile court abused its discretion in excluding the testimony.

¶11 As an initial matter, Mother's petition does not reflect the posture or full ruling of the juvenile court in excluding the testimony. The witnesses were not timely identified and were therefore limited to impeachment. Under rule 20A of the Utah Rules of Juvenile Procedure, disclosure of information necessary to support claims or defenses must be timely made "unless solely for impeachment." Utah R. Juv. P. 20A(b). Impeachment evidence is "evidence used to undermine a witness's credibility." *Glacier Land Co. v. Claudia Klawe & Assocs.*, 2006 UT App 516, ¶ 29, 154 P.3d 852 (cleaned up). Accordingly, the proffered witness testimony was appropriately excluded unless it was targeted solely to another witness's credibility. Additionally, a juvenile court has broad discretion to determine the relevance and probative value of evidence. *See id.* ¶ 24.

¶12 The juvenile court determined that most of the proffered testimony was not proper impeachment evidence.[1] The proffered testimony was that those witnesses did not observe the types of conduct testified to by Child. The court determined that such testimony was not probative and did not impeach Child's testimony because it would not conflict with the testimony. Given that Child's testimony of specific conduct and the proffered testimony that the witnesses did not see that conduct could both be true, the court did not abuse its discretion in excluding the testimony.

¶13 Mother also challenges the juvenile court's conclusion that she neglected Child. We need not decide this challenge on its merits because Mother has not challenged the court's separate and independent determination that she abused Child. *See In re G.B.*, 2022 UT App 98, ¶ 29, 516 P.3d 781. "Juvenile court jurisdiction over a child can be based on, among other things, either abuse or neglect." *In re K.J.*, 2024 UT App 47, ¶ 42. Because Mother does not challenge the juvenile court's abuse determination, the juvenile court has continuing jurisdiction over Child regardless of the neglect determination.[2]

¶14 Mother also challenges the juvenile court's denial of her motion for new trial. Appellate courts "review a [juvenile] court's ruling on a motion for a new trial under an abuse of discretion

---

1. The juvenile court allowed two witnesses to testify narrowly regarding conversations that could have impeached earlier witness testimony.

2. Moreover, to the extent that the issue is a sufficiency of the evidence challenge, we determine after a review of the record that the evidence was sufficient to support the neglect adjudication. Mother's callous response to Child's suicide attempt demonstrated a failure to protect as found by the juvenile court, given the "potentially fatal consequences" of the response.

standard." *State v. Torres-Orellana*, 2024 UT 46, ¶ 42, 562 P.3d 706 (cleaned up). However, "when the basis of a new trial order is ineffective assistance, the standard of review for ineffective assistance claims applies." *Id.* "An ineffective assistance of counsel claim presents a mixed question of law and fact." *Id.* ¶ 46 (cleaned up). A determination of ineffective assistance of counsel by a lower court is "a law-like mixed question, and therefore we review it for correctness." *Id.* ¶ 47. However, "where a district court makes factual findings that are relevant to an ineffective assistance claim arising in a new trial motion, appellate courts will defer to those factual findings and overturn them only if they are clearly erroneous." *Id.* ¶ 52 (cleaned up). Additionally, juvenile "courts are in the best position to evaluate the credibility of witnesses," and thus, "appellate courts defer to juvenile courts on matters of credibility." *In re K.F.*, 2009 UT 4, ¶ 52, 201 P.3d 985.

¶15 "To prevail on an ineffective assistance of counsel claim, Mother must show that (1) 'counsel's performance was deficient' and (2) this 'deficient performance prejudiced the defense.'" *In re C.M.R.*, 2020 UT App 114, ¶ 19, 473 P.3d 184 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish prejudice, Mother "must demonstrate a reasonable probability that the outcome of her case would have been different absent counsel's error. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id*. ¶ 21 (cleaned up). In evaluating the likelihood of a different result, we "consider the totality of the evidence before the judge," bearing in mind that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695–96.

¶16 Mother moved for a new trial, asserting that trial counsel was ineffective because he failed to timely disclose a variety of

"unused evidence" set forth in a twenty-three-page chart.[3] The juvenile court denied the motion. Although the court found that trial counsel's performance was deficient because he failed to timely disclose the identified evidence, the court found that Mother did not show prejudice. The court's order stated that the "summary charts do not contain the sufficient legal analysis upon which the court can rely in making its decision." Additionally, the court noted that Mother had failed to carry her burden of persuasion in showing prejudice because "Mother's briefs contain conclusory and summary statements alleging she was prejudiced by the actions of her attorney."

¶17 Mother asserts that she met her burden for a motion for new trial because she identified the standard for ineffective assistance of counsel claims, identified the missing evidence, and identified why it was important. However, identifying the evidence and why it was important does not demonstrate prejudice. Mother's argument regarding prejudice consisted basically of a single paragraph listing some of the missing evidence and stating that "none of this was used by [trial counsel] and the result was total prejudice to [Mother] at trial as a result." This conclusory statement is insufficient to show prejudice. It does not address the evidentiary picture at all, and it certainly does not demonstrate a reasonable likelihood of a different outcome given the totality of the evidence before the juvenile court. In sum, the juvenile court did not err in finding that Mother

---

3. Mother also asserted that trial counsel was ineffective due to a medical condition that allegedly affected his performance. The juvenile court rejected that claim, and Mother does not pursue that ruling on appeal.

had not demonstrated prejudice. Therefore, the court properly denied Mother's motion for new trial.[4]

¶18   Finally, Mother contends that her post-trial counsel provided ineffective assistance by not attaching the actual proposed evidence to the motion for new trial and "by not sufficiently arguing how the missing evidence harmed Mother." "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *In re A.H.*, 2021 UT App 57, ¶ 28, 493 P.3d 81 (cleaned up), *cert. denied*, 496 P.3d 715 (Utah 2021). Because the failure to establish either prong of an ineffective assistance claim defeats the claim, "we are free to address [Mother's] claims under either prong." *Id.* ¶ 35 (cleaned up). We determine that Mother cannot show prejudice because the "missing evidence" is largely irrelevant, of little probative value, and of questionable admissibility. The list of more than 150 items includes many that appear to lack foundation or time frames, and many items regard issues that were explicitly ruled on in some form by the juvenile court.[5] However, we address the specific evidence listed in Mother's petition.

---

4. Mother also asserts that the juvenile court was wrong in finding that "many of the court's findings and conclusions relied heavily on Mother's own admissions during her testimony." Mother contends that she denied the many allegations that were the basis for the court's finding of abuse. She is correct in that respect. However, her testimony supported many of the findings regarding neglect. Her petition asserts that her admissions did not "fully support" the court's findings, but the court did not rely on Mother's admissions for all of its findings.

5. For example, many of the items purport to show Father's abuse of Child, but the juvenile court excluded evidence of Father's alleged abuse as irrelevant to the allegations against Mother.

¶19 Mother first asserts that post-trial counsel should have attached bank statements that would have shown that Mother used DoorDash. She contends that this evidence refutes Child's testimony that, over the course of time, there was a pattern of servitude, including cooking and shopping. Child also testified that sometimes DoorDash was used. Because Child acknowledged that DoorDash was used, further evidence of its use would not affect the validity of her testimony.

¶20 Mother next asserts that Ring camera evidence should have been presented to refute Child's off-hand comment that Mother almost ran over someone when backing out of the driveway. The juvenile court addressed the matter of the Ring video on day four of trial when an effort to admit it was made. After discussion regarding what the video would show, the juvenile court accepted as a factual proffer that Mother did not almost run anyone over on the day that Child and others came to retrieve additional belongings. As a result, the video was not admitted. Mother does not challenge the court's exclusion of the video.

¶21 Mother also asserts that evidence supporting that Father abused Child should have been submitted with the new trial motion. However, the juvenile court made multiple rulings over the course of the trial, none of which are challenged on appeal, that evidence regarding any abuse by Father was not relevant to adjudicating the allegations against Mother. *See supra* note 5.

¶22 Mother further contends that evidence of Child's improper online behavior should have been attached to the new trial motion and argued as the reason that Mother took away Child's electronics. But in the new trial motion, it was asserted that Child's electronics were removed due to the online behavior. Similarly, in Mother's petition she asserts that she took the electronics away after discovering the online behavior and that Child responded by making allegations that would remove her from Mother's household. However, the assertions made in the

motion for new trial and in the petition are contrary to Mother's own testimony.

¶23    Mother testified that after she learned of Child's allegations, she "went home and . . . did not discuss it with [Child] at all." Rather, she talked with Brother about the allegations. After that conversation, she stated that she went to Child and asked for Child's phone and any other electronic devices and took them to her (Mother's) room. Mother also stated that she took the devices to look at them for inappropriate online behavior and that the removal was not a suspension. Given Mother's testimony, the post-trial assertion that she took Child's electronics away as discipline for Child's online behavior is not supported, and the specific evidence of Child's online behavior is not relevant.

¶24    Finally, Mother argues that she provided evidence that would call into question a detail of the alleged sexual assaults. She argues that a discrepancy regarding the age of a sleeping bag in which Child alleged one of the assaults occurred disproves the assault. However, not only is the age of a sleeping bag as reported by a child of minimal import, it does not affect the total evidentiary picture regarding Mother's conduct.

¶25    Overall, Mother cannot show prejudice resulting from post-trial counsel's failure to attach these specific items to the motion for new trial or failing to argue specific prejudice. None of the items identified had sufficient evidentiary value such that a reasonable likelihood of a different outcome could be shown. Accordingly, her claim for ineffective assistance of post-trial counsel fails.

¶26    In sum, for the reasons stated above, we affirm both the juvenile court's adjudication order and the denial of Mother's motion for new trial.

———————